Spencer, Ch. J.
The following facts I consider sufficiently proved and established. That the appellant signed the note as surety with Fowler to Baldwin; that, in 1808 and 1810, the appellant applied to Baldwin, representing the approaching insolvency of Fowler, and earnestly urged him to prosecute Fowler and collect the note; that Baldwin peremptorily refused to do so, declaring he would not trouble Fowler, if he never got his money.
That, prior to the month of June, 1812, Fowler was discharged from his debts under the insolvent act, and in the month of June, 1812, the note given by the appellant and Fowler was put in suit. The evidence renders jt reasonably certain, that had Baldwin prosecuted the note when he was required to do so, the money might have been collected of Fowler.
The appellant was alone arrested, and the cause was tried at a circuit court in November, 1812, and a verdict was obtained against the appellant for the principal and interest of the note, upon which a judgment was entered up, and an. execution issued. On the trial, the appellant offered proof of the facts, that he gave the note as surety, and #that tíre plaintiff at law had been required to sue Fowler, which he had refused to do, and that if he had sued him as required, the note might have been collected of him ; this proof was overruled, and no motion was subsequently made for a new trial.
Two questions have been argued: 1. Whether the appellant *306 is not precluded from his rights io equity, in consequence of ⅛® proceedings in the Supreme Court, and his acquiescence in the decision at law. 2, Whether the facts of the case, if the appellant is not thus precluded, entitled the appellant to relief in
I do not understand the chancellor to have expressed a decided opinion, that the appellant is concluded from asserting his rights in a court of equity, from the fact of his having been prevented, by a decision at the circuit, from going into his evidence. The only remark upon that point is, " that, perhaps, it would be sufficient to rest the objection to the plaintiff's claim here, on the trial and recovery at law ; ” he proceeds to show, that the defence was equally cognizable at law and in equity, but there is no express decision on that point,
I consider it an established principle, that where a court of equity once had jurisdiction, it will insist on retaining it, though the original ground of jurisdiction, the inability of the party to recover at law, no longer exists. (1 Madd. Ch. 2-3.) In Atkinson v. heonard. (3 Jiro. Ch. Rep. 218.) Lord Thurlow said, “ it did not follow, because a court of law will give relief, that this court loses the concurrent jurisdiction it has always had ; and till the law is clear on the subject, the court would not do justice in refusing to entertain the jurisdiction.” To the same effect are 9 Ves. 464. and 7 J es. 19. In Bellow v. Muhell, (1 Atk. 126.) Lord Hardwicke overruled an objection like the one made here: the plaintiff had been sued at law, and upon the trial, insisted to have a sum of money allowed him, and because it was not allowed, he filed his bill in equity, and his lordship entertained the bill, because it was matter of contract and account, and because he considered the party justly entitled to it.
I cannot view the appellant’s bill as founded on a matter #which is res judicata. Suppose a matter of set-off be offered on a trial at law, and overruled, and the party acquiesced, would that have been a bar to a suit ? Certainly not ; for as the matter was never passed, upon by the jury, it never was a subject of trial; it was not the appellant’s fault that the evidence was not received, and it would be unjust that he should suffer. If it had been a clear case of a defence at law, the objection would have force; but until the case of Pain v. Packard, the principle had not been distinctly settled in the Supreme Court; and, beyond all doubt, if the appellant was entitled to relief, the relief in similar cases, in the English courts, had been usually afforded in equity. I entirely subscribe to the opinion of Lord Rcdesdale, (Bateman v. Willoe, 1 Sch. & Lef. 205.) that, on a bill, in the nature of a bill for a new trial, after a trial at law, and where the subject was passed upon and decided on its merits, though the decision was wrong, a court of equity will not give relief. Í go further, and hold, that if the matter was strictly of legal jurisdiction, and the *307 nature of the case required the defendant at law to make his defence, as in the case of a direct payment upon a bond or note, in such cases a court of equity will not aid the negligence of the party. But if it be doubtful whether a court of law can take cognizance of the defence, and there exists no doubt of the jurisdiction of a court of equity, and if, in such a case, a defendant at law, under the influence of such doubt, omits to make his defence, or if he bring it forward and it be overruled, under the idea that it is not a defence at law, it is not granting a new trial for a court of equity to afford relief, notwithstanding the trial at law. In the case of Bateman v. Willoe, Lord Rcdesdale said, “ there may be cases cognizable at law, and also in equity, and of which cognizance cannot be effectually taken at law, and therefore equity does sometimes interfere ; as in cases of complicated accounts, where the party has not made defence, because it was impossible for him to do it effectually at law.” But the case of Rathbone & Rathbone v. Warren, (10 Johns. Rep. 587.) is expressly in point.
The Supreme Court have, undoubtedly, decided the principal question in this cause, in the case of Pain v. Packard, #(13 Johns. Rep. 174.) that if the payee of a note is required by the surety to proceed, without delay, to collect the money of the principal, who is then solvent, and if the payee neglects to proceed against the principal until he becomes insolvent, the surety may plead these facts at law; and if they are established, he will be exonerated. The chancellor, aware of this decision, has dissented from it, with a liberality and respect calculated to induce a re-examination of the doctrine with the same liberal feelings. It is true, that the case of Pain v. Packard was decided without argument at the bar; but it is equally true, that it received a very critical and deliberate examination by the court.
It will be observed, that in the cases of the People v. Jansen, and Pain v. Packard, the Supreme Court referred to the case of Tallmadge v. Brush, and admitted the authority of that case, that mere delay by the creditor in suing the principal would not discharge the surety; and the principle adopted in Pain v. Packard was this, that where the creditor did an act injurious to the surety, or omitted to do an act when required, which equity and his duty to the surety enjoined it upon him to do, and which omission was injurious to the surety, in either of these cases, the surety would be discharged.
The chancellor expressly recognizes the principle in equity, and which is supported by a strong current of authorities, that the surety has a right to apply to a court of equity, at any time after the debt is due, to coerce the creditor to bring his action to collect the debt of the principal. Without referring to any other authority, the case of Rathbone & Rathbone v. Warren, decided in this court, with entire unanimity, establishes the principle, that if the creditor does any act impairing the *308 rights of a surety, or varies the terms of the obligation, or enlarges the time of performance, without consulting the surety, the latter will be discharged.
The only point on which the chancellor and the Supreme Court differ, is this: the chancellor maintains, that the surety }jas no right, by an act in pais, to require the creditor to coerce the principal by suit to pay the debt, but that he must apply to a court of equity, which will lend its #aid for that purpose ; whilst in the case decided in the Supreme Court, it is held, that the creditor is bound to prosecute the principal at the request of the surety, and if he fail to do so, and the principal become insolvent afterwards, so that the debt is lost, as against him, the surety will be discharged.
The chancellor considers it unnecessary and inexpedient to introduce what he considers a new principle of action between the creditor and surety; he apprehends that it will open a litigious inquiry as to the certainty and efficiency of the notice, and that such a weapon, put into the hands of a surety, affords a temptation to vexation and fraud.
The principle adopted by this court, in Rathbone v. Warren, that a surety will be discharged, if a new agreement be entered into between the creditor and the principal debtor, varying or enlarging the time of the performance of a contract, although amply supported by cases decided in the English courts, is of modern growth, even in a court of equity. And it is well settled now, that this defence may be set up at law. Gibbs, Ch, J., says, in Orme v. Young, that the principle is borrowed from a court of equity. Our system of jurisprudence is in a constant progress of improvement, and some of the most valuable principles have sprung up and attained their perfection within the recollection of many members of the bar. Many cases might be mentioned, but I will only refer to that just and salutary rule, that a court of law will take notice of, and protect the rights of, an assignee of a chose in action. I have witnessed the rise, progress, and establishment of that wholesome and equitable principle. This, too, was borrowed from a court of equity. The soil into which it has been transplanted is congenial to its nature and its perfection; it has saved much litigation and enormous costs.
I do not, then, perceive any solid objection to a court of law taking cognizance of the matters forming the grounds of the appellant’s relief, because in such cases courts of equity have also jurisdiction. Much less do 1 perceive the necessity of applying to a court of equity to compel a creditor to do what equity and good conscience requires of him. Courts of equity, when they interpose to compel a #creditor, at. the instance of a surety, to sue the principal debtor, undoubtedly proceed on the sound and just principle, that it is the duty of the creditor to obtain payment, in the first instance, of the principal debtor, and not of the man who is a mere surety that *309 the principal shall pay the debt. The doctrine is, that it is inequitable and unjust for the creditor, by delaying to sue, to expose the surety to the hazards arising from a prolongation of the credit, and that the surety has an equity sufficient to in voke the interposition of the powers of a court of chancery for his protection. In every such case, a court of equity proceeds on a pre-existing equitable obligation binding on the conscience of the creditor, to exert himself to obtain payment of the debt from the principal, who is regarded as the real debtor, and who ought to be coerced to pay the debt; and it must be the natural and necessary consequence, that if the creditor, after an order or decree that he shall proceed at law to collect the debt of the principal, omits to do so, and thereafter the principal becomes insolvent, that the surety will be discharged.
If this duty exists, and does bind the conscience of the creditor, I cannot conceive why it may not be brought into exercise, by an act in pais, and without the interposition of a court of equity. Upon an application to that court by the surety, if the facts were conceded, an order or decree, that the creditor should prosecute the principal debtor would be a matter of course ; the decree would operate as a mere declaration of the duty of the creditor, and unless his conscience was dead to a sense of moral duty, it would not stand in need of such an admonition. If we are at liberty, as I think we are, to regard the consequences of the contrary doctrine, that the surety must either pay the debt himself, or resort to a court of equity to coerce the creditor to proceed at law against the principal, we shall find abundant cause to adopt the principle of the decision in Pain v. Packard, The delay and expense are serious evils ; the debt itself may, and undoubtedly will, in many cases, be jeopardized and lost, as regards the principal, and the surety will be exposed to the final payment, with a vast accumulation of costs.
*The principal objection to the decision in Pain v. Packard, is, “ that it will open a litigious inquiry as to the certainty and efficiency of the notice.” This objection lies with equal force to all acts in pais; such as a demand of the goods in an action of trover, a demand of the maker of a note, and notice of the non-payment to the endorsor, due demand and notice of nonpayment to the guarantee ; so in a great variety of other cases, the responsibilities of parties depend on acts in pais; and I cannot perceive any ground for alarm or apprehension, as to the mode of proof, unless we are prepared to distrust parol evidence in all cases.
The chancellor refers to the civil law, in support of his opinion. It appears that Justinian altered the civil law, and gave to the surety an exception of discussion, by which he might require the creditor to proceed, in the first instance, against the principal; but if the creditor does not proceed *310 against the sureties before he has proceeded against the principal, he cannot be obliged to proceed against the principal until he thinks proper; and his forbearing to proceed against him, does not eventually destroy his right of proceeding against the surety, however great the delay has been. (1 Polhier on Obligations, by Evans, p. 262—266, 267.) The civil law is evidently defective in not affording any process which should coerce the creditor to proceed against the principal, and the superiority of the English law is striking and manifest, in this respect.
My opinion rests on these principles, that the creditor is under an equitable obligation, and such is the essence of the contract, to obtain payment from the principal debtor, and not from the surety, unless the principal is unable to pay the debt; that if the creditor unjustly and improperly collude with the principal, to throw the debt on the surety, or after a full and explicit request by the surety, to proceed at law to recover the debt of the principal, the creditor, from any improper motives, refuses and neglects to do so, and by such refusal and neglect, the means of recovering the debt of the principal are lost, that then the surety is exonerated. This has been treated as a novel and alarming doctrine ; but, in #my apprehension, it cannot alarm an honest or conscientious creditor; for where is the man who will boldly avow the unjust and immoral principle, that after his debt has become due, and after he has been solicited by the surety to proceed and collect it, by prosecuting both principal and surety, he will abstain from suing, with a view of favoring the principal, and throwing the eventual loss on an innocent man, who, from motives of friendship or humanity, has become a surety ?
There is but a minute shade of difference between the opinion expressed by the chancellor, and that of the Supreme Court, in Pain v. Packard; and it is simply this: the chancellor holds, that a court of equity must first be appealed to, to compel the creditor to sue at law, w'hereas the Supreme Court maintain, that he can be required by the surety to sue, without the aid of a court of equity ; and if I am right in supposing, that there does exist a moral and equitable duty on the part of the creditor, to collect his debt from the principal in the first instance, (and this must be so, or a court of equity could not interpose at all,) then I maintain, that a court of law may, without overleaping its just jurisdiction, and in analogy to several other cases in which they take notice of existing equities, not only take cognizance of the equity which requires a creditor to collect his debt from the real debtor, but they may apply the consequence of the refusal of the creditor to sue the principal, without which the principle itself would be of no value, by holding that the surety is discharged, if the creditor will not do his duty and collect his debt, if he can, from the principal.
*311 In the case of the,People v. Jansen, (7 Johns. Rep. 336.) we recognized the authority of the case of Rex v. Barrington, (2 Vesey, jun. 542.) that whether a surety has been disci tinged or not, is a legal question. It is true, Lord Loughborough said, in that case, that it was the form of the security that forced these cases into equity, for that, where the principal and security are bound jointly and severally, the security cannot aver, by pleading-, that he is bound as surety; but il he could establish that at law, the rule or principle, by which his liability is to be determined, is a legal principle. #Now, we could not assent to his lordship’s proposition, that the fact of a man’s being bound as a security, could not be averred at law, if it became material to a legal inquiry ; for we understood the rules of evidence to be the same in both courts, and we in vain sought for the principle which allowed the inquiry in a court of equity, and denied it to a court of law ; and we, therefore, came to the conclusion, that the defence being a legal one, it necessarily followed, from the general rules of evidence being alike in both courts, that a court of law was competent to administer relief, arid to examine all the facts necessary to the relief.
it has been urged, that the surety has nothing to do but to pay the debt, and prosecute the principal himself. Those who make this remark, seem to forget, that whatever may be the form of the instrument by which the principal and surety become bound, it was never the intention of the parties that the surety should, in the first instance, pay the debt; he is actually a guarantee, that the principal shall pay the debt; and it would be a very inconvenient and rigid rule, which should require the surety to pay the debt, before he had any remedy against the principal, by means of the security which the creditor holds ; and they seem to overlook, also, the clear and settled principle of equity, that the creditor may be coerced, at the instance of the surety, to prosecute the principal.
I disclaim the introduction of a new' principle of law, but have endeavored to show that the principle is one already fixed ; that a court of law' has cognizance of it, and that, without the previous monition of a court of equity, if a creditor will disregard the rights of a surety so far, as unconscientiously to refuse to proceed at law' for the recovery of his money, when fully and reasonably required, and a loss happens by such refusal, that loss ought to be thrown on the party whose uncon-scientious conduct lias drawn it on himself. I am, therefore, of opinion, that the decree of the chancellor ought to be reversed.
Van Ness, J.,
said, that although he concurred in the law as laid down by the chief justice, yet he did not think that the facts in the case warranted the application of it. *He was, *312 therefore, of opinion, that the decree of the chancellor ougnt be affirmed.
Platt, J.
The only question, on the merits of the case, is, whether a request by the surety, and a refusal by the crecl-itor, to sue the principal debtor, then being solvent, with the fact of the subsequent insolvency of the principal, does in equity exonerate the surety from his engagement.
Upon a careful examination of all the authorities on this point, my mind has been irresistibly led to the conclusion, that, according to the rules of law and of equity, which are alike in this case, the facts here disclosed do not form a defence in the suit of the creditor against the surety.
By the law of such contracts, the surety, as original co-obligor or promisor, stands in the same relation to the creditor as the principal debtor, so long as the contract remains unaltered by the act of the creditor, with the acknowledged right in the surety, at any time after the money becomes due, to pay the debt, and to sue his principal, at his own risk, for indemnification. The surety may, also, by resorting to chancery, in most cases, compel the creditor to sue the principal debtor. I say, in most cases; for, in answer to a bill for that purpose, the creditor may show a state of facts which would destroy the equity of such an application. It is not of course to compel such suit against the principal; and hence, the reason, I apprehend, for requiring the surety to resort to a court of equity for that relief. For instance, suppose the creditor should answer, and prove, that the principal debtor is utterly insolvent, or resides under a foreign jurisdiction, or that the surety had been amply indemnified by his principal, or by a separate contract had assumed to pay the debt for his principal, a court of equity would, in these cases, deny such relief.
The thorough review of all the cases on this head, by his honor the chancellor, in assigning the reasons for his decree, (2 Johns. Ch. Rep. 554.) renders it useless for me to refer to, or comment on them.
I concurred in the judgment of the Supreme Court, in the case of Pain v. Packard: (13 Johns. Rep. 174.) but, upon more full and deliberate investigation, I am convinced, that ♦judgment was erroneous; and Í rejoice that I can now so early enjoy the privilege of acknowledging my error. However fit and proper it might be for the legislature to modify the rales of law and equity, in order to afford a more cheap and convenient relief and protection to sureties in such cases, (though I doubt very much the expediency of such a law.) I am convinced that, according to the existing law, the appellant, as surety, is not entitled, upon the evidence before us, to any protection against the claim of the respondents. Although we are now pronouncing an irreversible judgment in this court *313 of dernier resort, we ought not to be unmindful of the momentous truth, that it is our office here, to expound, and not to make the law,
My opinion is, that the decree of his honor the chancellor ought to be affirmed.
Fates,!., was of the same opinion.
Adams, Allen, Austin, Barnum, Barstow, Bates, Childs, Dayton, Mallory, Noyes, Rosencrants, and Wilson, Senate-! $, concurred in the opinion of the chief justice, that the decree of the chancellor ought to be reversed.
Van Yechtf.n, Senator.
The case presents two questions for the decision of this court: 1. ’Whether the appellant is concluded by the recovery against him at law ; and, 2. Whether, upon the merits disclosed by the pleadings and proofs in the cause, he is entitled to the relief which the Court of Chancery has denied him.
The first question turns upon the point, whether the matters alleged in the bill and proved, were available to the appellant, by way of defence to the suit at law ; for if they were, and he has neglected to avail himself of them, or if his defence was overruled at the trial, and he has acquiesced in the decision of the judge at the circuit, he cannot be permitted to resort to a court of equity, either to repair such neglect, or review that decision. This general proposition is so well settled, that it cannot be disturbed, without overleaping the jurisdictional line, which has been long established %etween the courts of law and equity, and opening a door to protracted and vexatious litigation. The doctrine, that the decision of a court of competent authority is binding upon all courts of concurrent power, is indisputable. It pervades every regular system of jurisprudence, (2 Karnes’s Eq. 367.) and has become a rule of universal law; it is founded on the wisest policy—-it springs from the necessity of putting an end to legal controversies, which have been heard and decided. Let me test this case by the foregoing doctrines.
The same matters which are set forth in the appellant’s bill, and proved, were stated in the notice to his plea to the suit at law; but the judge at the circuit rejected the testimony which was offered to verify the facts. From his decision, it was competent for the appellant to appeal to the Supreme Court, and thence to this court, in order to a final review and determination. But he has seen fit to waive that course, and to seek relief in the Court of Chancery, upon precisely the same matters which the judge at the circuit had overruled. Here, then, the question is fairly presented, whether the Court of Chancery could rightfully sustain the complainant’s bill. It will readily be perceived, that in order to sustain it, one of two ' *314 positions must be assumed: Either that the appellant had no relief at law, or that the Court of Chancery had concurrent power with the court of law. I will, therefore, consider, 1. Whether the matters of defence set up by his notice were cognizable at law; and, if they were, 2. Whether, admitting the concurrent power of the Court of Chancery, that power extended to reviewing the decision of the court of law ?
In the case of the People v. Jansen, (4 Johns. Rep. 337.) the late chief justice said, !< that there was nothing in the nature of the defence of a surety to make it peculiarly a subject of equity jurisdiction ; and that, whatever would exonerate the surety in one court, ought also in the other. The facts being ascertained, the rule of law must be the same in this court as in the Court of Chancery.” In Rees v. Barrington, Lord Loughborough asserted the same doctrine. (2 Vesey, jun. 542.) The rule established in both cases clearly is, that if the form of the security will admit *the inquiry at law, whether surety or not, a court of law will take cognizance of the surety’s de-fence. In order to test the applicability of this doctrine to the present case, it is necessary to examine, whether the nature of the security given by the appellant precluded the inquiry at law, whether surety or not. The cases above cited arose on bonds, and the solemnity of such instruments forecloses, in general, all inquiry at law into the consideration of them. But the case before the court arises on a joint promissory note, in which a greater latitude of defence is allowable at law : and, therefore, the consideration may be inquired into and impeached. A payment, or a higher security taken, or a release, may be given in evidence, to defeat a recovery. (4 Johns. Rep. 296. 7 Johns. Rep. 26. 4 Term Rep. 36, 37. 3 East, 258. Doug. 106.) Hence, it is difficult to assign a good reason why the appellant’s defence at law was not admitted, provided the matter of it was competent to exonerate him. On this point there is an express decision of the Supreme Court, that the defence was admissible at law. In Pain v. Packard, (13 Johns. Rep. 174.) impleaded with Munson, the action was commenced on a joint promissory note. The defendant, Packard, pleaded, that he signed the note as surety, and that he had urged the plaintiff to put it in suit, which he neglected, until the principal became insolvent; and the court said, “ there can be no substantial objection to such a plea.” It, therefore, is put beyond dispute, that if the appellant had brought the decision of the judge at the circuit, before the Supreme Court, for re-examination, he would have obtained the full benefit of the defence set up by his notice in the suit at law.
Let me now examine, whether it was competent for the Court of Chancery to interfere, after the merits of this defence had been overruled at law, and when the decision at law was acquiesced in by him.
It will not be pretended, that the Court of Chancery pos- *315 ¡¡esses power to review the decisions of the Supreme Court; for that power is vested exclusively in this court. But I admit, that the Court of Chancery can, and will, sometimes, relieve against a recovery at law, upon principles of equity. Such relief, however, according to the rule *laid down by Lord Ch. Talhot, must be confined “ to new matter, proved to have been discovered since the trial; otherwise,” said his lordship, it might be made use of as a method for a vexatious person to be oppressive, and for the cause never to be at rest.” Lord Hanlwicke, in recognizing the same rule, observed, “ that a notice of the matter to the counsel or agent of the party, is notice to the party, and sufficient to repel the new suit, for otherwise there would be no end of suits.” In Bateman v. Willoe, (1 Sch. & Lefray, 204.) Lord Redesdale said, “it is not sufficient to show, that injustice has been done, but that it has been done under circumstances which authorize the court to interfere ; because, if a matter has already been investigated in a court of justice, according to the ordinary rules of investigation, a court of equity cannot take upon itself to enter into it again.” In Le Guen v. Governeur & Kemble, (1 Johns. Cas. 492. 502.) this court sanctioned the doctrine, that every person is bound to take care of his own rights, and to vindicate them in due season, and in proper order: and that if a defendant. having the means of defence in his power, neglects to use them, and suffers a recovery to be had against him by a competent tribunal, he is for ever precluded,
On the first question, then, I apprehend the law is settled, that the matters stated in the appellant’s bill and proved, on which he sought relief in the Court of Chancery, were available to him by way of defence to the suit at law, and that his acquiescence in the decision of the judge at the circuit is conclu-sire against him. The general rule on which I found this opinion, is intended to put an end to litigation and to cherish peace, that men may know when they may repose with security on the decisions of courts of justice.
1 might here stop, inasmuch as the opinion which I have expressed results in favor of the decree of the chancellor. But the second question having also been discussed before this court, and there appearing to be a difference of opinion between the Supreme Court and the Court of Chancery, it may be proper that I should proceed to consider it.
The appellant contends, that he was discharged from his ^suretyship, by reason of Baldwin’s neglect and refusal to sue Fowler, when required by the appellant to do so; and this presents the point on which the Court of Chancery and the Supreme Court differ.
In Wright v. Simpson, (5 Ves. 734.) Lord Eldon said, that he never understood, that, as between the obligee and the surety, there was an obligation upon the former of active diligence against the principal. The surety is a guarantee, and, there *316 fore, it is his business to see that the principal pays. In the Trent Navigation Company v. Harley, and in Peel v. Tattlock, (10 East, 34. 1 Bos. &. 419.) the same doctrine is reIn Burm v. Administrators of Tough, (4 Dessaus. Bep. 604.) the Court of Appeals of South Carolina said, “ a surety will be released where an obligee does an act which varies the terms of the original contract: but a mere forbearance to sue is not such an act.” In Dehuff v. Turbott’s Executors, (3 Yeates’s Rep. 160.) the Supreme Court of Pennsylvania sanctions the doctrine, that a surety joining in a bond makes the debt his own, and has no power to give directions when the bond shall be put in suit. In Hunt v. United States, (l Gallis. 35.) Judge Story said, it was a sound principle, that mere delay, unaccompanied with fraud, or a settled agreement with the principal for that purpose, does not discharge the responsibility of the surety. In Ludióte v. Sirnond, (2 Caines's Cas. in Error, 30.) Mr. Justice Spencer said, both courts of law and equity will cast the responsibility on the surety, if by the terms of his engagement he has assumed it; but neither of them will do this, when he is not brought within the precise scope of his undertaking. Kent, Ch. said, a surety calculates upon the exact extent of his engagement, and is not to be supposed to bestow his attention to the transaction, and is only to be prepared to meet the contingency of his responsibility, when it shall arise by the contract. It, therefore, appears to be the established doctrine, that a creditor can hold a surety to the full extent of his contract; but when the creditor makes a new agreement with the principal, without the surety’s consent, the latter is thereby discharged. The irresistible conclusion from this doctrine is, that unless the creditor varies, by a new' agreement, the contract, by *which the surety has bound himself, the obligation of the surety remains unimpaired ; and this accords with the common understanding of mankind on the subject. But the appellant contends, and so the Supreme Court has decided in Pain v. Packard, before cited, that the creditor must sue, at any time, upon the surety’s request, or the latter will be exonerated. I state the rule thus broadly, because I do not perceive how it is to be qualified ; for unless the request of the surety to sue the principal has an imperative effect, in all cases, the rule will be productive of much mischief, and will be rendered uncertain in its application. It has already been shown, that this rule of the Supreme Court is at war with the established doctrine of the courts, both of law and equity, in England, recognized and enforced by the highest judicial tribunals of some of our sister states, approbat-ed and sanctioned by an enlightened judge of the Supreme Court of the United States, and supported by the decision of the Court of Chancery of this state. And here I must be permitted to express my regret, that I have not been able to ascertain the reasons and authorities, upon which the decision *317 of the Supreme Court is founded, as it deprives me of the benefit of those reasons -and authorities, in forming the opinion which my duty requires me to pronounce in this cause. 1 shall, however, proceed, with great respect, to state the reasons which govern my opinion.
Í consider the settled-and known doctrines of judicial tribunals as invaluable land marks, which ought not to be altered without cogent reasons. Such alterations lead to uncertainty, and frequently involve the substitution of experiment in the room of experience, which is generally a source of more or less inconvenience. Besides, it appears to me worthy of grave consideration, whether a departure, by the judicial tribunals of a particular state, from a well established general rule of law, will conduce to the advancement of justice. It must not be forgotten, that this is a highly commercial state, and that the com-mereial dealings between our citizens and those of other states, frequently produce contracts with sureties, to a large amount. In making such contracts, it is presumable that parties mean ¾> repose themselves upon the generally established and known rules of law on the subject. The introduction of a new and local rule may, therefore, be productive of inconvenience, and perhaps of injustice. In cases which may arise between our own citizens, and the citizens of other states or countries, the local rule may mislead the former, but can afford them no protection. Why, then, should a new principle of action, between creditor and surety, be introduced here ? The surety has now ample and well known means of relief in a court of equity, which will at once compel the creditor to do his duty, upon just terms. .This is the old settled course, recognized in Nesbit v. Smith, (2 Bro. Ch. 570.) and in Burm v. Administrator of Pough, (4 Dessaus. Rep. 604.,) and, I may add, in all the cases to be found. For when the books speak of the right of a surety to coerce the creditor to sue, by an application to chancery, it may fairly be inferred, that they mean, that he cannot be coerced in any other way. Again, the surety has, at all times, the power of relieving himself, by paying the debt and suing the principal in his own name; and this is within the scope of his undertaking, and according to the common understanding of its true meaning, that he is bound to see the debt paid. He is the person who trusts the principal; for the creditor manifests, by requiring a surety, that he does not rely on the principal; this renders the rule of Lord Hardwicke, (3 Atk. 93.) “that he who trusts most shall lose most,” strictly applicable to the surety.
Upon the whole, I am clearly of opinion, that the chancellor’s decree ought to be affirmed.
Bowne, Ditmis, Hascal, Livingston, Locnsbsbrt, Sey-Moi.n, Skin-nek, Van Ruben, and U. Yates, Senators, were of the same opinion.
*318 March 31st.
The members of the court being thus equally divided in opinion,† the president (Lieut. Gov. Tayler) declared his opinion, that the decree of the chancellor ought to be reversed ; And it was, thereupon, “ Ordered, adjudged, and decreed, that the decree of the Court of Chancery be reversed: And it was further Ordered, that the injunction *already issued by the Court of Chancery, to restrain the said Elisha Baldwin and the said Caleb Fowler, and also the sheriff of the county of Putnam, from further proceeding on the judgment obtained in the Supreme Court of this state, by the said Elisha Baldwin against the said Hcman King and Caleb Fowler, and particularly mentioned in the pleadings in this cause, be, and the same is hereby made perpetual against the representatives of the said Elisha Baldwin, and against all persons whomsoever: And it is further Ordered, that the several sums of money deposited by the appellant in the office of the assistant register of the Court of Chancery, on or about the 30th day of August, 1815, and on the ‘27th day of October, 1817, or on any other days, be paid over, by the said assistant, register, to the said appellant, or to his solicitor: And it is further Ordered, that the said respondents, Daniel Baldwin and Rem Adriance, and the said Eliphalet Baldwin, the executors of the said Elisha Baldwin, deceased, pay to the said appellant, or to his solicitor, the costs incurred by the said Hcman King, in the defence of the said suit or action at law, before mentioned ; and do, also, pay to the said appellant, or to his solicitor, the costs of the said appellant in the Court of Chancery; and that the proceedings be remitted,” &c.
Decree of reyersaL (a)

 For affirming, 13 5 for reversing, 13.

 In Fulton v. Matthews, (15 Johns. Rep. 433.) Die Supreme Court held, that the creditor's delaying to sue the principal, or discontinuing a suit already commenced, without the privity of the surety, would not discharge the surety, although the principal was solvent when the suit was commenced, and, afterwards, became insolvent; as the creditor had not been required by the surety to sue the principal, nor had done any act, or made any contract with the principal debtor, which would disable him from suing him, at any time. In the case of the Vrccde, (1 Dodson's Adm. Rep.) Sir W. Scott recognized the doctrine of the Court of Chancery, as laid down in Nesbett v. Smith, and Wright v. Simpson, and applied it to the case of a surety to a bond given, on the delivery of goods to the claimant, to answer adjudication, in which there had been no demand against the principal for nine years after the decree of restitution. (Vide 3 Wheat. Rep. 154—158, note. Dunn v. Slee, 1 Holt’s jY. P. Rep. 309.)
The exception-of discussion which, by the civil law, a surety was allowed to oppose to the demand of the creditor against him, was not allowed to judiciary sureties, nor where the principal debtor was absent, or had no property which could be attached. Although the creditor might defer this discussion against the principal debtor, as long as he pleased, without losing his security ; (Dig. Lib. 46. tit. 1. 1. 62.) yet the surely might, although he had not beensued by the creditor, or paid the debt, sue the principal debtor, if he was in failing circumstances, for his indemnity; so where the principal debtor, after the time of payment had expired, neglected fora long time to pay the creditor, the surety might sue him, to compel him to discharge the debt, though the creditor was quiescent. “ Si diu in solu-tione reus cessabit, aut corte bona sua dissipabit; pnesertim si domi pecuniam fidejussor non habebit, qua numerata creditor!, mandati actione conveniat.” (Dig. Lib. 17. tit. 1. 1. 38.) The law, however, fixed no precise period of delay on the-part of the debtor, which should give the surety a right to sue for his indemnity but it was left to depend on the circumstances of each case. Vide Hayes v. Ward, 4. Johns. Ch. Rep. 123.