UTICA,
August, 1823.

Row
v.
PULVER.

Where, on adjournment, the defendant gives security to appear and stand trial, or surrender himself in execution, in case judgment shall go against him, it is the duty of the plaintiff to take out execution, as soon as he can legally do so, or the surety is discharged.

This should be forthwith, on judgment, if the defendant is a *single man*, and not a *freeholder;*

Or if a *man of a family*, or a *freeholder*, within 30 days after the judgment, exclusive of the day of judgment.

And even where there is no *alternative* in the undertaking of the surety, but it is *absolute, to pay, it seems,* that he will be discharged, if the plaintiff do not take his principal in execution, so soon as he can, after request by the surety, that this be done, if the surety is injured by the delay.

Where the plaintiff proceeds, as a *non-resident*, security for an adjournment need not be given by the defendant.

But if, *in fact*, given, whether the surety is liable on his undertaking? *Quere.*

## Row *against* PULVER.

ON certiorari to a Justice's Court. In assumpsit, by *Pulver* against *Row*, in the Court below, it appeared that *Pulver*, as a non-resident plaintiff, within the 25 dollar act, section 4, (1 *R. L.* 388-9,) had sued one *Louks*, who obtained an adjournment upon the defendant, *Row*, signing the following instrument as security:

"DUTCHESS COUNTY, ss.

*Philip Louks*
      ads.
*John W. Pulver.* } Action by warrant, under $25 act. The defendant applies for an adjournment. I, *Phillip A. Row*, do hereby become security, that the said *Philip Louks* shall appear before *Henry I. Traver*, the Justice, before whom such action is pending, on the 18th instant, at 2 P. M. at the house of *Israel Reynolds*, in the town of *North East*, in said county; and stand trial, and pay the damages and costs, or render himself in execution, in case judgment be given against him in the action. Dated Feb. 15, 1822.

*Philip A. Row.*"

The Justice waited an hour and a quarter at the place of adjournment, then heard the cause, and gave judgment for $13,50 against the defendant, *Louks*, who soon after appeared with *Row*, the bail, (the Justice and Constable still being there) in whose presence some conversation passed about paying the judgment, in which *L.* professed his readiness to go to gaol, rather than subject his surety; and *Pulver* said he did not wish him to go to gaol; that *Row* was holden and must

pay the judgment. *Row* told *Pulver* that *L.* was there, and he might take him in execution. *L.* was a young unmarried man, and worked for *Row* till some time in *April* thereafter, and was in the neighborhood of the parties and Justice, till about the 22*d May*, 1822, when the execution issued. Verdict and judgment for the plaintiff.

*Ruggles & Hooker*, for the plaintiff in error.

*J. W. Edmunds*, contra.

*Curia.* The judgment must be reversed. It is fairly to be inferred, from the evidence in the case, that *Louks*, the original defendant, was not a freeholder ; and it is expressly proved that he was an unmarried man. Execution might, therefore, have gone against him immediately ; or, admitting him to have been a freeholder, execution might then have issued in 30 days, which would have been on the 20*th* of *March.* The undertaking of *Row* was in the *alternative,* either that *Louks* should *stand trial,* and pay whatever *damages and costs* might be recovered against him, *or surrender himself* in execution. The case of *Tuttle et al.* v. *Kip,* (19 *John.* 194) shows that *Row* had no authority to surrender *Louks ;* that " the common law incidents of a recognizance of bail, according to the practice of Courts of record, do not apply to a Justice's Court." Until execution issued, and in the hands of the Constable, *Louks* could not be surrendered. It was, therefore, the duty of the plaintiff to have placed the execution in the Constable's hands as soon as it could legally have been done, even without a request from *Row.* But *Row* did request the plaintiff to charge *Louks* in execution as soon as the judgment was obtained; and the evidence in the case shows that he might then, and for three months afterwards, have been taken. This brings the case within the principle of *King* v. *Baldwin,* (17 *John.* 384,) " that the surety is discharged, if the creditor, upon request, neglect or refuse to call upon the *principal,* and the omission is injurious to the surety."

UTICA,
August, 1823.

But the plaintiff sued *as a non-resident*. The statute(a) required no security to be given for the adjournment; and it may be questionable whether *Row* could be held liable on his undertaking, upon *that ground*. (*Dunham* v. *Heyden*, 7 *John.* 381.) The judgment must, however, be reversed upon other grounds.

Judgment reversed.

