Bland, Chancellor.
This case standing ready for hearing, and no counsel appearing for.the defendants, the solicitor for the plaintiffs was heard, and the proceedings read and considered.
This case, as it now stands, is. much reduced in compass, but is not yet altogether free - from difficulties. The first inquiry is, whether, in point of fact, the purchase money has been paid by the plaintiff Hoffman, or those under whom he claims ; or whether, according to the principles of equity, the vendee has been altogether discharged from his responsibility, even although the purchase money may not have been entirely collected and paid.
According to the contract between the parties, the vendor was to obtain payment, in part, by collecting the amount due on several bonds and notes, assigned to him on the 23d of July, 1791; which, as was declared by the agreement, “ when paid are to go in discharge of the amount of, such payments.” The debt due from Chapline, which was one of them, it is admitted, by a solicitor of the defendants, has been lately collected and paid. And it is proved, or conceded, that the whole of the purchase money has been paid, except to the amount of the debts said to be still due from Hole and from Benner. And whether or not these have been paid, or the vendee discharged from his responsibility for them, is, at present, the whole extent of the controversy as- regards the purchase money.
The purchaser, in respect to these assigned debts, was placed in the situation of a surety, (a) It will, therefore, be necessary to advert to the general principles of equity, applicable to parties standing in the relation to each other, in which these did, of creditor, principal debtor, and surety.
According to the Roman law, a surety was allowed three advantages : 1st, he might compel the creditor to sue the principal debtor first; 2d, the creditor might be driven to resort to each surety for his proportional share only; and 3d, a surety, sued for the whole debt, might demand of the creditor to transfer over his actions against the other sureties, before he was allowed to recover the *105 whole from the one sued; that is, to have it placed in his power, as far as practicable, to obtain reimbursement, by being clothed with all the powers of the creditor and substituted in his place, (a) These principles and privileges, it is said, have been substantially adopted by all the nations of Europe, of whose code the Roman law forms the basis; which shows that they accord very much with natural equity and the common sense of mankind.(b) The principles of equity, of England and of Maryland, although in most respects substantially the same, are apparently not so broad and indiscriminate in their application.
In the ordinary case of a money bond, there is no distinction, upon the face of it, between the principal and the surety; who being both debtors to the same creditor; a court of equity will rarely, if in any case, be induced to make any distinction between them, as regards their creditor. Being alike his debtors, and equally bound to him; and the credit having been given to them all together; equity never interferes with such a contract, so as to loosen any of its ligatures, unless upon peculiar and strong ground. Yet, as between themselves, such obligors,, without prejudice to their creditor, may be treated, according to. the fact, as principal and surety, and relieved accordingly. The surety may come into equity to compel his principal to relieve him of his liability by paying off the debt; but it is otherwise in the case of a bond of indemnity, the.legal effect of which is to protect against the consequences of future deficiencies, but not to entitle the party to call for anticipated and precautionary payment, by way of preventing the risk of his being thereafter damnified, (c) Hence it is evident, that a case can rarely occur, under a contract in the form of a mere money bond, where one of the obligors, who may be, in fact, no more than a surety, can be considered as discharged by reason of the obligee’s not proceeding against his co-obligor; or, merely because of the laches of the creditor.(d)
The principles of law in relation to negotiable and commercial paper, have arisen out of the peculiar nature and uses of such instruments. It has been found, from experience, every where, that it is of the utmost importance, in commercial affairs, that the holder of such paper should, without delay, give every one who has become a surety or endorser, notice of its fate. Hence the *106 holder of such an instrument is held strictly bound to use due diligence; or, on his default the surety or endorser is discharged. Cases of this kind can have little bearing on that now under consideration.
In the case of a surety for the performance of sendees; as, of a penal bond, the condition of which is, that one of the obligors shall faithfully perform certain work, or discharge the duties of a certain station, as a clerk, or the like; no unreasonable tardiness, on the part of the obligee, will be tolerated. In such cases, one of the obligors only is to perform the service, and if he neglects his duty, the employer alone can know it, and he alone can give notice of the neglect. Hence it is evident, that any unreasonable delay in making a claim, or a long acquiescence in the nonperformance of the services, must be considered as a waiver of the right to call for compensation; and as a tacit discharge of the surety, whose principal has been thus unreasonably indulged to his prejudice. Therefore, in this class of cases, the obligee must use due diligence in bringing suit after the cause of action has accrued, or the surety will be discharged.(e)
But the case now under consideration, belongs to a different-class. It is one of those where the debtor places in the hands, and under the control of his creditor, the means of reaching funds, which are represented as available and adequate to the satisfaction of the demand. And the creditor, by accepting those means, tacitly undertakes to use due diligence in endeavouring to make the funds available ;vor to furnish evidence that they do not exist, by shewing that there was nothing in the hands of the alleged holder of them; or, that he was insolvent; and also, that, after having made every proper effort to come at such funds, he will return or reassign the bond, note, or judgment, which had been, placed in his hands for that purpose. An example of this class of cases may be presented in this form : A is indebted to B, and B is indebted to C. And it is agreed, that B shall assign his claim upon A, to C, which, when paid, is to go in discharge of the debt due from B to C ; consequently, by this agreement, C becomes the creditor, A the principal debtor, and B stands as the surety of A. But if it should turn out, that there is nothing due from A to B ; or that A is insolvent, then the consideration of the agreement fails, and B again becomes a principal debtor to C.
*107 In cases of this sort, the exertion of every reasonable and propeí degree of diligence is within the express terpis and meaning of the contract. And, after all such proper efforts have been made', before payment can be enforced from the surety, equity and justice require, that the bonds, notes, or judgments, or all the securities he had placed in the hands of his creditor, or enabled him to procure, should be returned, or reassigned, so as to put it in the power of the debtor or surety to obtain reimbursement from the funds which he had represented as sufficient, and which his creditor had shewn that he was unable to render available.(f) Such are the principles of equity applicable to this case: let us now review the facts.
It appears that Hole’s bond was payable on the 23d September, 1786; that it was given to secure the payment of the purchase money of a certain lot of land, which was held bound for the payment of this debt, by an equitable lien; and, which lien there is strong reason to believe, continued unimpaired down to the year 1807. At May term, 1793, of the General Court, the assignee obtained judgment against Hole on this bond ; on which judgment a ca. sa. was issued, returnable to May term, 1794, and there the judicial proceedings appear to have ended. Hole petitioned for the benefit of the insolvent law, in April, 1794; yet, it does not appear that he obtained a complete discharge under any insolvent law until 1802. Not even an offer has been made by the holder of this bond, given by Hole, at any time, to return it, or to transfer the judgment obtained on it to the vendee. From all these circuip.-stances it is considered, that the vendee is entirely discharged from all responsibility for this debt of Hole’s. If it has been lost, it has been owing to the laches of the vendor; and, therefore, the vendee ought not any longer to be held answerable.
The bond of William Benner, it appears, became due on the 1st of January, 1786 ; and he died on the 10th August, 1793. It was generally reported, that he was, shortly before.his death, entirely insolvent; but that he left some personal estate, is certain. The vendor or assignee, brought suit on his bond, and obtained judgment against him, in the General Court, in May, 1793, on which a ca. sa. was issued, returnable to October, 1793. From *108 thenceforward, as to this claim, the proofs are silent. There has been no offer to return this bond of Benner’s, or to assign the judgment against him to the vendee. From the lapse of time and all other circumstances, it may be presumed that this debt has been satisfied; or, if not, that it has been owing to the laches of the vendor; and, therefore, in this instance, also, the vendee is entirely-discharged from all farther responsibility.
Upon the whole, it thus appears, that the entire amount of the purchase money has been paid, or discharged in the manner agreed upon. And here this case might be closed, were it not, that the vendor, since he entered into this contract, has made a resurvey of these tracts of land, and included contiguous vacancy; and, that the vendee claims an allowance for deficiency in quantity. These matters must be disposed of; and they have presented the principal difficulties in the case.
Shall not this resurvey, made by the vendor, at his own expense, after entering into this contract, enure, in all respects, to the benefit of the vendee ? Shall the claim of the vendee for an allowance for deficiency be sustained to the fall' amount, notwithstanding it has been made up, in part, by contiguous vacancy included under the warrant of resurvey ? and, shall the vendor be now called on to refund, to the amount of the deficiency, not so made up by contiguous vacancy, after the purchase money has been paid? The answers to these questions must be deduced from the peculiar rules of our law relative to real estate. It does not appear, that these questions have ever before been presented for judicial investigation; the Chancellor is, therefore, without the aid of precedent.
In this case the vendor, by his bond, dated 23d July, 1792, binds himself to convey to the vendee “ the tracts or parcels of land called Font’s Delight, and' The Resurvey on Beauty, containing four hundred and twenty-four and an half acres of land, more or less.” By a resurvey, made in April, 1792, these tracts were found to contain together no more than 384 acres; but, by that resurvey, eighteen acres of contiguous vacancy were included, making, in all, 402 acres in this resurveyed tract which was called “ The Reunion,” leaving a deficiency of 221 acres, including the vacancy; and of 40s acres, if that addition is to be rejected. The claim for an allowance for deficiency was first made by the supplemental bill, filed on the 15th of August, 1821; and, it is there made and designated by a reference to this return on the warrant of resurvey executed by and at the expense of the vendor.
*109 Where lands are sold by metes and.bounds, or in a body, by a designated name, number, or lot, without reference to quantity, in such cases, according to the English authorities and our own, no allowance is made for any deficiency; unless on the ground of fraud, or misrepresentation. And where lands are sold by measurement, or by the acre, no mere question as to the deficiency can arise. But where, as in this instance, the specified tract is stated to contain so many acres, more or less, difficulties often arise as to the claim of an allowance for deficiency. The precise meaning of the words “ more or less,” has been fixed by no decisions; but the better opinion seems to be, that they should be restricted to a reasonable allowance for small errors in surveys, arid for variations in instruments. Something, too, will depend on the proportion the deficiency bears to the whole tract. It seems to be difficult to fix a positive rule.(g) But it is considered, that under all' circumstances, this is a case in which there is a fair ground for presenting such a claim for deficiency; and therefore it must be investigated and decided.
It has been long settled, that every patent grant for land, from the State to an individual, binds the State to warrant and assure to the grantee, and those who claim under him, that the tract described shall contain the number of acres specified. The remuneration for deficiency in quantity is not, however, pecuniary,(h) or made by *110 refunding the purchase money; but it is made in kind, in other land warrants, or by an authority to take other vacant lands any where to the amount of the deficiency, (i) This warranty, or implied covenant, passes with the legal title of the grantee to his assignee, and all those who hold the legal title under him; and is never extinguished until, after the amount of the deficiency having been ascertained, the legal holder has been satisfied by obtaining other land warrants, or has actually included other vacant land equal in quantity to the deficiency. Any legal holder, in order to ascertain the existence and extent of this claim against the State, may, of right, obtain from the land office a warrant of resurvey; and take in any vacant land immediately contiguous to the original tract. The deficiency, thus ascertained, is directly set off, in the land office, against the vacancy included; and, if the vacancy amounts to as much, or to more than the deficiency, the claim against the State is fully satisfied; but if less, then it is only satisfied in part.(j)
In these respects this general, but implied warrantry in every patent grant from the State, must be regarded as a peculiar, and beneficial incident, and privilege beginning, and associated with the legal title of the original grantee, and following that legal title from him to all others, who claim under him, until it has been separated, and complete satisfaction has been obtained by a holder of the légal title. (k)
In this case, these tracts of land were deficient in quantity, and, this incidental claim against the State, and the privilege of including contiguous vacancy, subsisted in full force at the time the contract was entered into between these parties. The vendor stipulated to make a good and legal title to these tracts; tacitly, but clearly, including all incidents and privileges associated with the legal tide. The vendor cannot be allowed to withhold any, then subsisting, beneficial incident to the legal title; nor can the vendee be allowed to relieve himself from any burthen or responsibility by rejecting any incident to the title he contracted to receive.
It is one of the chief purposes of a warrant of resurvey, issuing from the land office, to ascertain the existence and extent of this implied warranty; and, where a deficiency exists, to make it up by taking in contiguous vacancy. It is true, that under such a warrant, the party may taire in any contiguous vacancy, not only *111 to the amount of the deficiency in the original tract, but to a much greater extent. Whether the vendor can be permitted, considerably, or in any degree, to enlarge the tract of land by a resurvey after the contract of sale is entered into, and can compel the purchaser to take and pay for such addition, is another and a very different question from that under consideration; and one which it will not now be necessary to determine.
But, in this case, the vendor, after ascertaining the deficiency, has supplied it, only in part, by the addition of contiguous vacancy. This mode of making up the deficiency subsisted as an incident to the legal title at the time the contract was entered into by these parties. The vendee, therefore, cannot be now permitted to reject this incident, and claim a deduction for these acres of vacancy, leaving-the vendor to hold them as his separate .estate. If the vendor were not allowed, in this way, to make up the deficiency, then the vendee would obtain the original tract together with, or divested of this privilege of including these eighteen acres of contiguous vacancy. In the first case, he -might obtain them, by means of his legal title, without paying for them; of on the other hand, the vendor might have cast upon him a small inconvenient scrap of land, which, from its situation, wordd be alike unsaleable and unprofitable, unless in connexion with one or other of the immediately adjacent tracts. But these eighteen acres have been obtained from the State by the vendor as the holder of the legal title to the original tracts, by virtue of a privilege incident to that title, and as immediately contiguous to those tracts; they must, therefore, pass from the vendor to the vendee as connected with, and parcel of those tracts; and consequently, these tracts are not, so far, deficient.
As to the residue, or the deficiency of twenty-two and a half acres, it is now too late to claim an allowance for them, after the whole amount of the purchase money has been voluntarily and fully paid. Under all the circumstances of this case, the vendor cannot now be called on to refund any part of the purchase money.
It appears, that the equitable interest -which George Schnertzell had obtained from the holders of the legal title has been fully and entirely transferred to, and is now vested in John Hoffman, one of the plaintiffs. And the representatives of the parties to the original contract, having been all of them made parties to this suit:
Decreed, that the defendants, by a good and -sufficient deed made, executed, and acknowledged according to law, transfer and *112 convey unto the plaintiff, John Hoffman, his heirs and assigns, in fee simple, all those several tracts of land in the proceedings mentioned, called “Fout’s Delight,” and “ The Resurvey on Beauty,” and all their interest in that other parcel of land included by a warrant of resurvey on those tracts under the name of “The Reunion.”' And it is further decreed, that Henry Hoffman is hereby constituted and appointed trustee, under the last will and testament of the late James Hunter; and that he, by a good and sufficient deed, executed and acknowledged according to law, convey unto the complainant, John Hoffman, all the legal title of, in and to the said tracts of land. And it is further decreed, that the defendants pay unto the complainants their costs, to be taxed by the register.

 Anstey v. Marden, 1 New Rep. 124.

 Coop. Just. Inst. 612.

 Hayes v. Ward, 4 John. C. C. 133.

 Antrobus v. Davidson, 3 Meriv. 578.

 Ex parte Rushforth, 10 Ves. 414; Coop. Just Inst. 462, 612.

 Coop. Just. Inst. 613.

 Kearslake v. Morgan, 5 T. R. 513; King v. Baldwin, 17 John. Rep. 384; Hayes v. Ward, 4 John. C. C. 123; Eddowes v. Niell, 4 Dall. 133; Clark v. Young, 1 Cran. 192; Harris v. Johnston, 3 Cran. 311; Ex parte Mure, 2 Cox. 63; Williams v. Price, 1 Sim. & Stu. 581.

 Townshend v. Stangroom, 6 Ves. 340; Winch v. Winchester, 1 Ves. & Bea. 375; 1 Pow. Cont. 375; Land Hold. Assis. 253; Nelson v. Matthews, 2 Hen. & Mun. 164; Duval v. Ross, 2 Mun. 290.
Murdock v. Beall. — This was a creditor’s bill, filed on the 7th of May, 1799, to have the real estate of Samuel Beall, deceased, sold to pay his debts. Sale decreed and made. The trastee reported, that he had sold the tract of land' called Exchange, supposed to contain 828J acres, more or less; that soon after the sale, it was discovered, that Walter Beall, who had conveyed to Samuel Beall, had retained fifty acres, for which he had made an allowance to the purchaser; but, that the purchaser had caused the land to be surveyed, and had discovered, that, in the residue, there was a deficiency of nine and a quarter acres, for which he claimed an allowance. Upon these facts the case was submitted.
17th February, 1804. — Hanson, Chancellor. — As the whole of Exchange was intended to be sold, and afterwards a discovery was made, that fifty acres thereof had been retained by Walter Beall, it was proper in the trustee to make the purchaser an allowance for the said fifty acres; because the deficiency was not of quantity, but in-Exchange there was a defect of title. But, as to the nine and a quarter acres deficiency in quantity, the Chancellor is clearly of opinion, that the purchaser is not entitled to an allowance for that deficiency; and not being entitled to that allowance, he cannot possibly be entitled to an allowance for the expense to which he has voluntarily put himself to shew the deficiency.

 Land Hol. Assis. 481.

 Land Hol. Assis. 473.

 Land Hol. Assis. 319, 468, 480, &c.

 Land Hol. Assis. 153.