Jackson *v.* Huey.

## L. M. JACKSON *v.* CARROLL HUEY.

PRINCIPAL AND SURETY. *Notice to sue. Solvency of principal at date of notice.* A surety will not be entitled to relief in equity because of the failure of the creditor to sue the principal upon verbal notice, unless the notice is accompanied by an express declaration that he would consider himself discharged if the creditor did not proceed forthwith.

Quere, whether the surety must not also show the actual solvency of the principal at the date of the notice, and not a mere probability that the money might have been made by suit then commenced.

FROM ROBERTSON.

Appeal from the Chancery Court at Springfield. GEO. E. SEAY, Ch.

GARNER & SON for complainant.

HICKS & COBB and J. W. JUDD for defendant.

COOPER, J., delivered the opinion of the court.

On September 3, 1873, the complainant, with T. H. Gardner, R. E. Gardner, T. J. Gardner, and R. B. Daniel, executed a note to the defendant, due at one day, for $2,500, signing his name as surety. On January 25, 1876, the defendant brought suit on the note against all the makers by writ returnable to the February term of the circuit court. At that term the pleadings were made up, but before the next term, and about the first of June, all of the makers of the note except complainant went into voluntary bankruptcy. This bill was filed, June 6, 1876, to enjoin the further prosecution of the suit at law against the complainant upon the ground that he had been released by the failure of the defendant to sue T. H. Gardner, the principal debtor, upon verbal request. The chancellor, upon the hearing, dismissed the bill, and the complainant appealed.

The bill alleges: "That complainant sent the defendant word, on the 11th of September, 1875, to collect the money due on said note immediately, that he did not want to stand as security any longer; that he wanted the money made on the note." The complainant adds, though he does not aver that it constituted a part of the message: "That complainant was fearful that T. H. Gardner, who was the man of property on the note ahead of your orator, would not remain good, and therefore your orator wanted said note collected, and the defendant was urged and notified to collect the note." The bill further alleges that

defendant received the complainant's message in time to have brought suit to the October term of the circuit court, in which event he could have collected the amount of the note from T. H. Gardner.

The defendant, in his answer, denied that he had received any notice or instructions from complainant, as charged, to bring suit on the note. In his deposition he admits that in September, 1875, he received word from complainant, through one Hart, that he "desired him to push that note,—to bring suit upon it." On the other hand, Jackson, the complainant, goes beyond the averment of his bill in his testimony, and says: "I told Hart to tell Mr. Huey to bring suit on said note immediately and collect it; that I was afraid of Mr. Gardner's health, and I was also afraid he would fail, and that I did not want to stand security any longer." Harts testimony is that some time in September, 1875, Jackson asked him to convey word to the defendant "of a desire on his part to have suit brought upon the note, and said he would like to have it done in time to have all the notices served." In cross-examination, he is asked the question: "Did Jackson require you to notify Huey that he must sue Gardner, or did he merely express a desire that he should sue? State the exact shape in which it was put." His reply is: "He told me to tell Mr. Huey that it was his request or desire that suit should be brought on the note." The witness adds that he went to defendant's house, a few days afterwards, and told defendant "the conversation that had occurred" between him and Jackson, "and that it

Jackson *v.* Huey.

was Jackson's request that he bring suit upon the note." He also testifies that in the conversation between him and complainant he does not think anything was said about the probable failure of Gardner, but he is sure something was said about the health of Gardner, and that if he died it would take a long time to wind up his estate, and he thinks he mentioned this to the defendant.

There is evidence that the defendant did, about the end of the month of September, but in time for the service of process to the October term of the circuit court, place the note in the hands of an attorney to bring suit thereon, and withdrew it upon the assurance of a third person, a mutual friend of the parties, that Gardner had made arrangements to borrow the money, and would pay the note on the first Monday of October. Gardner himself testifies that he had arranged to borrow the money, but the negotiations were broken off by his refusal to secure the loan by a mortgage on his land. There is also proof tending to show that complainant made no complaint to the defendant because of his failure to sue. And the complainant testifies that at the February term after he was sued he offered to give his own note, with collaterals, to the amount of the note sued on, upon condition that he be allowed to confess judgment, so that he might take judgment over by motion against his principal. The defendant referred the complainant to his (defendant's) counsel, but nothing was done. The complainant explains his action by saying that when he gave the verbal notice to sue he thought it would release

him, but he afterwards looked into the Code, and, finding that the notice therein mentioned was required to be in writing, he supposed that he was not released.

The record shows that in October, 1875, T. H. Gardner owned a large body of land worth over $20,-000, and several thousand dollars' worth of personalty. Most of his personalty, over exemptions, seems to have been shortly after disposed of, and a part of the realty worth perhaps $2,000. His debts probably exceeded the value of his property in October, 1875, as much as when he went into bankruptcy. But it does not appear that these debts were in the form of judgment. And there is evidence of two or three witnesses that a judgment recovered at the February term of the circuit court for the amount of the note in controversy could have been made.

The defendant admits what Hart proves that he received word from complainant in September that he desired him to bring suit upon the note, and to bring suit at once, in the language of the defendant "push the note." It does not appear that the request was accompanied, as alleged in the bill, with the statement that complainant "did not want to stand as security any longer," or that he "was fearful that T. H. Gardner would not remain good, and therefore he wanted the note collected." All that was added to the request as above by the messenger was that the complainant had said something about the health of Gardner, and that if he died it would take a long time to wind up his estate. The question is, therefore, narrowed down to this, does a request by a surety to the prin-

Jackson *v.* Huey.

cipal to sue at once upon the note on account of the state of health of the principal work a release of the surety in a court of equity?

As early as the year 1801, the Legislature of this State enacted that a surety might, by notice in writing, the service of a copy of which was proved by two witnesses, require the creditor forthwith to put the instrument of suretyship in suit, and that the creditor would forfeit his right to recover· from the surety unless, within thirty days after the notice, the creditor should commence an action, and proceed with due diligence · in the ordinary course of law to recover judgment for, and by execution to make the amount due thereon: Code, secs. 1968, 1969. These statutory provisions conferred upon sureties a positive right, while they guarded the rights of the creditor by requiring the notice to be in writing, the demand to be positive to sue forthwith, and the proof of service to be by two witnesses. The courts of law adhered to these requirements: *Miller* v. *Childress*, 2 Hum., 320; *Simpson* v. *State*, 6 Baxt., 440. " I wish you to collect the debt," was held to be insufficient: *Parrish* v. *Gray*, 1 Hum., 88: So, " I do not like the way James Rice [the principal] is getting along. . What have you done with the note I endorsed? I wish you would come up and do something with it. He has plenty of property now to make your money:" *Rice* v. *Simpson*, 9 Heis., 809.

In the year 1819, the Senate of New York, then sitting as the Court of Error, reversing a decision of Chancellor Kent and against the opinion of a majority

of the judges who were members of the court, by the casting vote of its presiding officer, the lieutenant Governor of the State, held that a surety was entitled to relief in equity, even after a judgment at law, where the creditor, although urged by the surety to collect the money from the principal debtor, refused to do so, and delayed to sue until the principal became insolvent: *King* v. *Baldwin*, 17 Johns., 384. The Supreme Court of that State had previously held a refusal of the creditor to sue upon the demand of the surety to procecd immediately to collect the money, was a good defense at law: *Pain* v. *Packard*, 13 Johns., 174.

As the duty of performance rests on those who make engagements, not on those with whom they are made, the doctrine of these cases has not met with uniform approval. And if the Legislature undertakes to specify the mode in which the surety may entitle himself to relief, the provisions of the statute would seem to afford the proper basis for that relief. Nevertheless, our predecessors on this bench have held that the remedy of the surety in equity was independent of the remedy given by the statute, and would be administered accordingly. In *Hancock* v. *Bryant*, 2 Yer., 476, the surety had given the creditor a written request to proceed to collect the debt, adding: "If you do not proceed immediately to collect it, you cannot think I am to be security." The creditor delayed for two years thereafter to sue, the evidence making it more than probable that the money might have been made out of the principal if the suit had been brought within a reasonable time after request.

Upon a bill filed by the surety, he was granted relief on these facts. In *Thompson* v. *Watson*, 10 Yer., 362, there was first a verbal request to sue, and then a letter to a friend, shown by him to the creditor to notify the creditor to forthwith institute suit, "otherwise he would be no longer responsible." The principal became insolvent before suit brought, the proof making it probable that if suit had been brought at the time of the request, the debt would have been made. The surety was again held to have been discharged. In *Burrows* v. *Bank of Tenn.*, 6 Hum., 440, the notice alleged by the surety was denied by the creditor, and not sustained by the proof. Relief was refused, and the court, citing the two preceding cases, said: "The principle of those cases, we now think, goes to the verge of the law." And there can be little doubt that the learned American editors of White & Tudor's Leading Cases in Equity are right in saying that the doctrine of *Pain* v. *Packard* is "radically unsound." It was again recognized by this court in *Hopkins* v. *Spurlock*, 2 Heis., 155, which, however, was a case wherein the surety failed to obtain relief.

In other States in which the doctrine has been followed, the surety is not entitled to relief unless the request to sue is accompanied by an explicit declaration, in any words which clearly convey the meaning, that he will consider himself freed from liability if the creditor does not proceed forthwith: *Cope* v. *Smith*, 8 S. & R., 110; *Erie Bank* v. *Gilson*, 1 Watts, 143; *Heller* v. *Crawford*, 8 Wright, 105; *Strickler* v. *Barkholder*, 11 Wright, 476; *Lockridge* v. *Upton*, 24 Mo., 184.

It has also. been held, and in the State of New York where the doctrine originated, that the surety will not be discharged unless the failure to comply with the request results in loss, which must appear from proof, the burden being on the surety, that the principal was solvent at the time, and became insolvent afterwards: *Huffman* v. *Hurlburt*, 13 Wend., 377; *Weiler* v. *Hoch*, 1 Casey, 525. Mere probable solvency of the principal in reference to the debt in question at the time of giving the notice would not be sufficient. "The principal," says Cowen, J., "is not to be deemed solvent at the time of notice, unless he be then able to pay all his debts according to the ordinary usage of trade:" *Herrick* v. *Borst*, 4 Hill, 650. The charge to the jury in this case, which the supreme court sustained as correct, was: "That the term solvent, in law, meant that a man was able to pay all his debts from his own means, or that his property was in such a situation that all his debts might be collected out of it by legal process." And the court sustained the judge's refusal to charge: "That should the jury find the principal to have been in such a situation, when the notice to prosecute was given, that the note might, and would in all probability have been collected by due course of law out of his property, the surety was not liable." "I understand the rule to be," says Cowen, J., "not that the jury can appraise the possibility, and relieve the surety in proportion to the value of the chance, but that if the principal was solvent when the notice was given, and the neglect to sue be

followed by subsequent insolvency, the whole action is barred."

These modifications of the rule, with a citation of the authorities in support of them, are recognized by the text writers: 2 W. & T. Lead. Cas. in Eq.,, 1905 (4th ed.); 2 Am. Lead. Cas., 415 (5th ed.); Adams' Eq., 268 note, (6th Am. ed.)

Treating our cases as sound, although going to the verge of the law, the first is in full accord with the decisions of other States, for there was a positive demand to sue immediately, with an explicit declaration that the surety would consider himself freed from liability if the creditor failed to proceed. The statement of the Reporter in the second case shows that the notice was also accompanied by the declaration of the surety that "otherwise he would be no longer responsible." We have no ruling in this State to the contrary. The rule of the solvency of the principal is, however, at any rate in the first case, more liberal than that warranted by other authorities, and is perhaps the point on which the cases were said to have gone to the verge of the law. In *Hancock* v. *Bryant,* Peck, J. says that "a probability that if suit had been brought the money might have been made," would suffice. The delay to sue was for two years. The delay in the other case was for one year, and, the court say, "until all but the complainant became insolvent."

If we test the notice in the case before us by these cases, and the authorities cited from other States, it is clearly insufficient because not accompanied by an ex-

13—VOL. 10.

plicit declaration, or any declaration that if suit was not brought forthwith the complainant would no longer be liable. The creditor had the right to treat it as a mere friendly request, which he might concede or not as he thought best for both parties. The complainant has probably equally failed to make out a case of solvency of the principal at the time of the notice within the sounder rule.

Affirm the decree with costs.