By the Court,

Cowen,. J.
The first exception was to the definition of the term solvency. The judge charged ££ that the term solvent, in law, meant that a man was able to pay all his debts from his own means, or that his property was in such a situation that all his debts might be collected out of it by legal process.” He was requested to charge that, should the jury find Borst to have been in such a situation, when the notice to prosecute was given, that the note might and yvould, in all probability, have been collected by due course of law out of his property, the surety was not liable. The refusal so to charge is the object of the second exception.
The meaning of the word solvency, is usually tested by its opposite, insolvency. Suppose a man unable to pay all his debts from his own means, or that all his debts cannot be collected out of those means by legal process; is there any doubt that in the general sense of the word he is insolvent 1 Debts are paid with property ; and u in one sense,” says Mr. Bell, by which he no doubt intends the primary and ordinary sense, «insolvency is the inadequacy of a man’s funds to the payment of his debts.” (2 Bell’s Com. 162.) Notice of insolvency, by the 46 Geo. 3, ch. 135, § 1, avoids transactions with a *653 bankrupt, intermediate a secret act of bankruptcy and the commission issuing. This, says Lord Ellenborough, means the bankrupt’s general ' inability to answer his engagements. (Anonymous, 1 Camp. 492, note.) Other cases are satisfied with yet less, viz. “ when he is not in - a condition to pay his debts in the ordinary course as persons carrying on trade usually do.” (Bayly v. Schofield, 1 Maul. & Selw. 338 ; Shone v. Lucas, 3 Dowl. & Ryl. 218.) The first of these definitions is most favorable for the defendant; and I apprehend the charge of the circuit judge, viz. that a man’s inability, to pay his debts by his own means amounts to insolvency, will not be found materially variant. It is certainly possible that a man in such a condition, if pursued by an action, may be made effectually responsible, though the event would not be very probable ; at least not for the whole debt. Enjoying an unqualified exemption from imprisonment, having a right, and it being his duty, to distribute his property pro rata among his creditors, and laboring under the temptation to cover it up for the benefit of himself or his family, the ultimate collection could seldom be regarded as more than possible. The question to be decided is, whether under our rule for the protection of sureties a jury should be allowed to speculate on the event, and bar the creditor accordingly as they may guess that the suit against the principal would have been successful or not. I understand the rule to be, not that the jury can appraise the possibility, and relieve the surety in proportion to the value of the chance; but that if the principal was solvent when the notice was given, and the neglect to sue be followed by subsequent insolvency, the whole action is barred. The result is the same as if the creditor had given time to the principal debtor by positive contract. The latter is sufficiently severe, but it proceeds on a logic peculiar to itself. The remedy of the surety is suspended. He cannot pay the debt and sue his principal; or rather perhaps a new obligation has been fabricated to which he never assented. Neither has any application to the mere delay of the creditor. The surety may himself pay the debt, *654 and sue instantly, with all the chance which he complains that the creditor has neglected. In the event of a loss, his own neglect is as much the cause as that of the creditor. On the clearest solvency and greatest neglect of the creditor, therefore, the surety comes with very slight pretensions in foro conscientice.
Take the alternative in the charge, that a man is to be con- ■ sidered as insolvent when his debts cannot be collected out of his property by .legal process. This is the common case of which a man says u I can pay all my debts if my creditors will let me alone.” Is that solvency 1 His creditors probably will not let him alone; or if they will, has he that general ability to pay of which we have been speaking 1 It depends on the forbearance of his creditors whether he shall go through. Such a man Mr. Bell considers as more particularly insolvent. The case he puts is, of a man who cannot proceed without some general arrangement with his creditors, some indulgence given in point of time, some consent that his payments shall be made in small portions. “ A person in this state,” says he, “ is truly insolvent; and it does not follow that he is not insolvent because in the end his affairs may come round and he may ultimately have a surplus on winding them up.” (2 Bell’s Com. 162.) If his funds be not sufficient to meet collections-by process, it follows that he cannot go on without the arrangement of which Mr. Bell speaks. This may be either negative or positive, tacit or express; the status of the debtor is effectually the" same in either case.
The definitions of insolvency cited to us from Cranch and Wheaton have no application. They were founded on the words or object of the statute declaring that the United States shall, as a creditor, have preference in case of its debtor’s insolvency. This was held to mean a state of legal insolvency,, by which the debtor had parted with the control of his whole means. (Ingr. on Insol v. 4, 1st ed.) The word often varies in signification according, to the several occasions of enquiring into it. Sometimes an estate is declared forfeitable by insolvency. *655 The object here is different from that of the rule which authorizes the vendor to stop goods in transitu because the vendee is insolvent, and the definition of the word would vary accordingly. The insolvency which entitles you to discontinue an action without costs, must be technical. Yet no one would think of insisting that a man is to be deemed solvent until he comes to this, within the principle on which the surety may require a prosecution to be instituted. The question here is, whether the chance of collecting be equal in value to the debt. I say so, because the creditor forfeits the whole debt as the penalty of his neglect. The loss cannot be apportioned. His demand was valid as against the surety ; and I can conceive of no reason for his losing the whole, because of his neglect to prosecute another who was in fact good for little or nothing. The punishment is out of all proportion to the delinquency.
The charge proposed, viz. that the note might and would, in all probability, have been collected, is narrowing the case down to a probable solvency in respect to the particular debt; and, in terms, making the probability equal to moral certainty. If the jury had the right to graduate the value of the insolvent’s paper, and deduct or recoup the amount, there would be a show of propriety in the request. The poorest note may be considered worth something. But they had no discretion ; at any rate, the request to charge left them none. It was a request to say that the loss of the probability, to be judged of by the fact that the man had, by successfully struggling, kept his head above water, should bar the whole action.
The view taken of the question in Huffman v. Hulbert, (13 Wend. 377,) the only case in this court where the kind or degree of insolvency on which the surety is to be discharged has been noticed, is not inconsistent with the direction given at the circuit. Mr. Justice Nelson there said, the rule is founded on the assumption that the debt is clearly collectable by suit; and upon this ground only can the rule be defended. Again, he says, there must be something more than an ability to pay at the option of the debtor. Among other reasons he mentions *656 the surety having a remedy of his own by payment and suit, a reason which, as I mentioned, would, in other cases, deprive the party complaining of all claim; for in no other case that I am aware of can he demand compensation or raise a defence grounded on his own neglect. What principle such a defence should ever have found to stand upon in any court, it is difficult to see. It introduces a new term- into the creditor’s contract. It came into this court without precedent, (Pain v. Packard, 13 John. 174,) was afterwards repudiated even by the court of chancery, (King v. Baldwin, 2 John. Ch. Rep. 554,) as it always has been both at law and equity in England ; but was restored on a tie in the court of errors, turned by the casting vote of a layman. (King v. Baldwin, 17 John. 384.) Platt, J. and Yates, J. took that occasion to acknowledge they had erred in Pain v. Packard, as Senator Van Yechten showed most conclusively that the whole court had done. The decision was obviously erroneous in an another respect, as was also shown by that learned senator. It overruled a previous decision of the same court in Le Guen v. Gouverneur, (1 John. Cas. 492,) on the question of res judicata; necessarily so, unless it be conceded that the defence belongs exclusively to equity. I do not deny that the error has become inveterate ; though it has never been treated with much favor. A dictum was referred to on the argument, in The Manchester Iron Manufact. Co. v. Sweeting, (10 Wend. 162,) that the refusal to sue is tantamount to an agreement not to prosecute the surety. The remark meant, however, no more than that such a neglect as amounts to a defence is like the agreement not to sue in respect to being receivable under the general issue. The judge was speaking to the question whether the defence should not have been specially pleaded as it was in Pain v. Packard. On the other hand, it has often been said that the defence should not be encouraged, but rather discountenanced; and several decisions will be found to have proceeded on this ground. (Warner v. Beardsley, 8 Wend. 198 ; Fulton v. Matthews, 15 John. R. 433, 436 ; Ruggles v. Holden, 3 Wend. 216.) In *657 Warner v. Beardsley, Chancellor Walworth says, the principal must be solvent when the request is made, and there must be delay without reasonable excuse till insolvency ensues. Even if we are bound to receive the defence at all, which he seems to doubt on reviewing the history of King v. Baldwin, he expressed a decided repugnance to enlarging the operation of the rule. Were it necessary, we ought I think to say, that the principal shall not be deemed solvent so long as he comes within another definition which I cited, viz. if he be Unable to pay his debts according to the ordinary usage of trade. (See M'Cullock’s Com. Dict.-, " Insolvent” “Bankrupt;” 2 Bell’s Com, 162 ; 1 Maule & Selw. 350, 353, 4, 5 ; 1 Dowl. & Ryl. 218.) Of a man who is able thus to pay, it may in general be said that a suit, if not a pressing letter, would fetch the money; and that a neglect till the decline of his affairs supervened would work a loss to his surety equal to the debt. It is not necessary, however, in the case before us, to go so far. The judge’s charge put the case on the ordinary and more obvious meaning of the word. (John. Dict.; Insolvency; Ingr. on Insolv. 4, 1st ed.) We think he was right.
New trial denied.