## PEARSON, ET AL. v. GAYLE.

1. The right conferred on the bank, of suing out an attachment in the county of its location, is a privilege conferred on it, and does not abridge the power it previously possessed, of suing out attachments in the county of the residence of the defendant.

2. When the clerk, pursuant to an order of the court, that a bond to be approved by him should be filed within ninety days, receives a bond within the time, and endorses it, *filed in office*, he cannot afterwards be permitted to testify, that he did not approve or disapprove it.

3. It is no defence at law, either partial or total, that the creditor at the instance of the surety, agreed to file the note in the clerk's office for a dividend, the principal being dead, and insolvent, and that for want of the necessary affidavit, it was rejected by the orphans' court. If the party has any redress, it must be by action, to recover damages for the misfeasance. Whether a court of equity would afford redress—*Quere?*

Writ of Error to the Circuit Court of Talladega.

Assumpsit by the defendant, against the plaintiff in error. After the return of the writ, the plaintiff, by his agent, made oath, that the defendant was about to remove his property out of the State, and prayed an ancillary attachment, which issued and was levied on some slaves.

The defendant moved the court to quash the attachment, and set aside the levy for errors apparent on the attachment, and because no bond had been given. The court made an order quashing the attachment, and setting aside the levy, unless within ninety days from that day, the plaintiff should execute a sufficient bond, to be taken and approved by the clerk.

At the succeeding term, a motion was made to quash the attachment for a failure to comply with the terms.

The facts are, that within the time limited by the order, the attorney of the plaintiff, received by mail from Mobile a bond purporting to be under the seal of the bank, with security, which he handed to the deputy of the clerk, the principal being absent, who, without inquiry or approval of the bond, filed it, making an indorsement thereon, filed in office, 25th May, 1846. The deputy knew what the bond was, and its object. Another bond was also filed, after the motion was made, the particulars of which need not be stated. The court refused to quash the attachment.

The case was then submitted to the court, upon the following agreed facts:

On the 8th March, 1845, the estate of Eli Shortridge, the principal in the note now in suit, was reported insolvent to the orphans' court, and on the 1st April, 1845, duly declared insolvent. About the 20th June, 1845, according to the notice and request of the defendant, who was a surety on the note, it was filed in the office of the clerk of the orphans' court by the plaintiff. On the 16th July, 1845, the defendant paid $262 50 on the note, and on the 13th February, 1846, the orphans' court proceeded to make a final settlement of the estate, and upon the objection of the administrator, the note was rejected by the court, for want of an affidavit, such as the statute requires, and denied any participation in the assets of the estate. It was agreed, that if, upon this state of facts, the defendant was entitled to make a defence against the note, either in whole or to a part, only, judgment should be so rendered in his favor, otherwise in favor of the plaintiff.

Thereupon the court decided that these facts were not any defence to the action, either total or partial, and rendered judgment for the amount of the note. This is now assigned as error.

S. F. Rice, for plaintiff in error, moved this court for a rule upon the judge of the circuit court, to show cause why the attachment should not be quashed, which being refused, he then argued the merits.

L. E. PARSONS, contra.

ORMOND, J.—It is contended, that the law authorizing the banks to sue out attachments, returnable into the counties in which they are located, (Clay's Dig. 64,) does not authorize them to sue out an attachment returnable to the county of the defendant's residence, when the suit is there commenced. We consider this construction of the law wholly untenable. The right of the bank to sue in the county of its location, is a privilege conferred on the bank, but by no rule of construction can this deprive the bank of its right to sue the defendant in the county of his residence, either by attachment, or in the ordinary mode; to hold otherwise, would be to convert what was intended as a privilege into a restriction. It was not intended by this act to abridge any of the privileges before conferred on the bank, but merely to add another, the right to sue out an attachment returnable to the county *of its* location.

We dismiss all the argument in relation to the constitutionality of the act authorizing the bank to sue out attachments, without executing a bond, and to the sufficiency of the last bond executed, because there was a literal compliance with the order of the court requiring a bond to be filed, within ninety days. The position, that the clerk, though he received the bond, filed and indorsed it, may still be permitted to testify that he never approved it, cannot be admitted. By receiving it, and filing and indorsing that fact upon the bond, he is estopped from denying that he approved it. His approbation is a mental act, which can only be manifested by the reception, and filing of the bond, as his diapprobation would be by his refusal to receive and file it. This is quite too clear a proposition to require further illustration. This point was in effect decided in McClure v. Colclough, 5 Ala. R. 65. The rule for a mandamus must be denied.

We proceed to the consideration of the merits of the case. The discharge of the surety from liability to the creditor, upon the note in this case, is claimed, because the bank did not at the request of the surety, file the claim in the orphans' court, with the necessary affidavit, so as to entitle the credi-

tor to a *pro rata* dividend upon the note, but that on the contrary, for the want of this affidavit, the claim was rejected.

To a proper understanding of this question, it is necessary to inquire, what were the respective rights of the creditor, and the surety, upon the estate of the principal debtor being declared insolvent. The creditor, as is admitted, was under no obligation to make presentment of the claim to the orphans' court, and if the surety desired to come in as a creditor of the estate, he should have discharged the debt and presented his claim. It follows, therefore, that the act of the creditor, in presenting the claim, was for the benefit of the surety, and his agreement to do so, if in fact there was an agreement, was without consideration.

But it is strenuously urged, that if the creditor omits to do an act when required by the surety, which duty enjoins him to do, and the omission is injurious to the surety, he is discharged. Conceding this to be the law, it does not establish that the surety is discharged in this case. Here he had no right to call on the creditor to prosecute this claim on the insolvent estate; the refusal, or omission, therefore, could not have been a violation of any duty, and if the omission is injurious to the surety, it is an injury for which the law can afford him no redress.

It is also urged, that although the act of filing the claim by the bank was gratuitous, and such as it could not have been required to do, yet, having undertaken to do the act, and having done it in such a manner, that an injury has thereby accrued to the surety, the loss must fall on the bank. A party may doubtless be responsible for a loss, occasioned by an act done gratuitously, at the request of another, but the only means by which the injured party could obtain redress, would be by an an action for the misfeasance. This right of action, certainly could not be set up to defeat an action upon another contract. As the breach of one contract, could not be pleaded in bar of a suit upon another contract, neither could the damage sustained by such breach be set up as a partial defence in the nature of a set off, for the obvious reason, that the damage is unliquidated, and could only be ascertained by a suit for the breach of such contract.

36

It was also supposed in argument, that the omission on the part of the bank to file the affidavit, and the consequent rejection of the claim by the orphans' court, will discharge the surety, because no action can be maintained against the administrator of an insolvent estate. It is certainly true, that from the accessorial character of the contract of suretyship, when the right of the creditor is gone to enforce the debt against the principal, he cannot coerce payment from the surety. But this rule only applies, where the right has been extinguished by the act of the creditor, not when it occurs by operation of law, as in a discharge in bankruptcy. The assumption of the argument, that this result has been produced by the act of the bank, is without foundation, as the inability to sue the administrator would have been precisely the same, if the affidavit had been filed, and a dividend declared.

It is said, however, that where the creditor does, or omits to do an act, injurious to the surety, the surety is discharged, without regard to the extent of the loss. This is true only of acts done by the creditor, as where the time of payment is delayed by a contract between the creditor and debtor, without the consent of the surety; in such a case the surety is absolved, because of the change in the contract, and it is unimportant to what extent he is injured by it, or whether he is injured at all. Our books are full of illustrations of this principle. An omission to act by the creditor, as it cannot alter the original contract, is attended by different results. Mere passiveness on the part of the creditor, has never been held to affect his right to proceed afterwards against the surety. The only duty which the surety can require the creditor to perform, at common law, is to sue the principal debtor, but his omission to bring the suit, does not necessarily discharge the surety. To produce this result there must be a a loss consequent on the omission of the creditor. This is the duty referred to in the case of King v. Baldwin, 17 John. 384, the omission of which, when required by the surety, would, if injurious to the surety, be a discharge of his liability. If there was an omission of duty here, by the neglect of the bank to file the affidavit, upon the request of the surety, the latter would not, as contended, be discharged from

liability for the entire debt, as a consequence of the omission, but only to the extent of the injury sustained by the surety, from such omission. But it has been shown, and indeed is admitted that this was a duty which the surety had no right to call on the creditor to perform, the doctrine therefore relied on, has no application to the case. If it be conceded, that the surety has been injured by the omission of the bank, and that he has a right to demand redress, it will not in the slightest degree affect the right of the bank to recover on this contract.

The rights of sureties are now well settled, both in this court and elsewhere, and rest upon clear, intelligible, and well established principles, deduced from the rights and obligations of the parties to the contract. The doctrine contended for, would be a most alarming innovation of the settled doctrine, and cannot receive our sanction.

To prevent misapprehension, it may be proper to say, that nothing said in this case is intended to forestall an examination in a court of chancery of the facts, in such a case as the present. That question not being now before the court, it would be improper to make an intimation either way.

Let the judgment be affirmed.