Curia, per
Dargan, Ch.
The only question which I deem it necessary to discuss in this case, is whether the complainant’s intestate, (Alfred Brevard) as the surety of James W. Cantey, has been discharged by the laches of the Bank, in not recording the mortgage of the said Cantey, for the tract of land on Hobkirk Hill; which mortgage was executed for the purpose of securing the payment of the debt for which the complainant’s intestate was liable as surety.
If the question here raised were res integra in our courts, it might well be considered a debateable one. Even in that case, however, upon a careful collation and review of the English and American authorities, I think I should be led to the same conclusion to which I am constrained by the solemn adjudications of our own tribunals. This case is no way to be distinguished, by the most critical comparison, from that of Hampton v. Levy, where the identical question was made, upon precisely the same state of facts, and where, after the same course of argument here urged, the decision of the Court was, that the surety was not discharged by the omission of the creditor to record the mortgage of the principal debtor. The case of Smith v. Tunno, is, if not a stronger case, one equally as strong against the surety. There Gibbes, the Master in Equity, selling property under a decree in Chancery, took no mortgage at all; though it was a part of the published conditions of the sale, that in addition to personal security, a mortgage of the premises would be required; and if the conditions were not complied with in a month from the day sale, the property was to be resold at the risk of the first purchaser. And it was not shewn that the surety sanctioned, *64 or was aware of, the waiver of or omission to take a mortgage, jn pursuance 0f the conditions of the sale. The surety in ' such a case might with great force and plausibility exclaim, non lime infender a veni. But on application to this Court, he was held not to be discharged. And if an omission to take any mortgage, when it was a part of the stipulation that one should be taken, does not discharge the surety, it is difficult to perceive why the omission to record a mortgage actually taken, could have that effect. Certainly the interests of the surety are less jeoparded in the latter case, inasmuch as, at the date of these occurrences, an unrecorded mortgage would have prevailed against a subsequent judgment, or any other incumbrance, except a subsequent mortgage duly recorded.
17 Johns. Ch. R. 384.
13 Johns. Ch. R. 154.
The prominent and well defined’distinction, that pervades all the cases that may be deemed authoritative on this subject, is, that the surety will be discharged by any acts on the part of the creditor of a positive character, whereby the remedy against the principal debtor is lost; so that payment cannot be enforced against him. Such would be the case where on the part of the creditor, there was a destruction, abandonment, or waiver of counter securities. If the creditor, for a consideration, and by a binding stipulation, gives time to the principal debtor, without the consent or concurrence of the surety, the latter will be discharged, though the principal debtor is perfectly solvent. This is not only a positive act on the part of the creditor, but it is a new contract, to which the surety is no party. For acts of mere passive sufferance, omission, and delay, the surety will not be discharged. And this rule is the more reasonable, inasmuch as a surety thus aggrieved, has the remedy in his own hands ; and by various-alternative modes of proceedure, may redress himself. He may convert the passive indulgence and delay of the creditor, into a positive wrong, by demanding that he proceed to the collection of his debt. If the requisition be not complied with; in a reasonably diligent manner, and the principal becomes insolvent, it will afford ground for relief. The doctrine here asserted is not involved in this case, and has never been judicially recognized by the Courts of this State. But it is fully affirmed in the well considered cases of King v. Baldwin, and Paine v. Packhard, The judgment in the case first cited, was the result of much elaborate consideration, and ^ Principle involved was this : “Where the creditor did an act injurious to the surety, or omitted to do an act, when required, which equity and his duty to the surety enjoined it upon him to do, and which omission was injurious to the surety, in either of these cases the surety would be discharged.” — And accordingly, in that case the creditor was adjudged to have lost his claim against the surety; having refused or omitted, at the request of the surety, to proceed against the *65 principal. I am authorized to say, that a majority of this Court are prepared to adopt the principle of this decision, and to extend similar relief to a surety under the like circumstances.
2 Bro. 578. 17 Johns. 384.
Another remedy, which a surety might have against a too indulgent creditor, would be, on the quia timet doctrine, to file a bill in this Court, both against his principal and the creditor, and to compel the latter to accept payment, or to proceed to the recovery of a judgment. Nesbit v. Smith, King v. Baldwin. Or, the surety might, in consistency with the terms of his own contract, pay the debt of his principal, and bring an action at law against him, to recover the amount. In the case we are considering, Alfred Brevard, if he had been himself active and vigilant, might have easily discovered that the mortgage was not recorded. He might have demanded that the mortgagee should have it recorded ; or that it should be delivered to him for that purpose. If this legitimate demand were refused, and injury had resulted to the surety, from the non-registry of the mortgage, he would have been entitled to relief. In not pursuing this course, he has not himself been vigilant, and the maxim vigilantibus and non dormientibus, &c. applies.
I will not say that there might not occur a case of outrageous neglect on the part of a creditor, in omitting to recover his money from the principal debtor, in which the surety would be exonerated. It is not difficult to conceive of cases in which the neglect would be so gross as to amount to a fraud upon the surety. In an instance of this kind, he might be relieved. In the present case, the omission of the Bank to record, cannot in any possible light be regarded as a criminal or culpable neglect.
It has been the opinion of some lawyers eminent for their learning, that the Bank charter dispensed with the necessity of registering mortgages to the Bank. A distinguished jurist, who long and ably presided over the affairs of that institution, was of this opinion and acted upon it. And the Bench itself, of the present day, are not unanimous on the question. The Bank must therefore stand acquitted of any gross neglect, or of any intention to do that which was not becoming and just towards the sureties of Geni. Gantey. There is then nothing presented in the case made by the sureties which entitles them to relief in this Court. And considering the various remedies which the surety himself possesses, against the passive indulgencies and omissions of the creditor, the rule that refuses him exoneration for such passive indulgen-cies and omissions, is neither unreasonable nor severe.
It would seem that the complainant, as administrator, not anticipating that this specialty debt of the Bank would be presented, has applied assets to the payment of simple con *66 tracts; and that there will now be a deficiency of assets to pay all the debts, including this claim of the Bank, hereby adjudged to be legal. If, upon a future investigation, it should appear that previous to an application of the assets to simple contract debts, he duly and legally, as required by law, advertised for creditors to present their demands, and paid away the assets before he received notice of this claim, he will not be required to pay the claim of the Bank out of his own estate. In such case, the Bank will be entitled to a decree for the whole balance due upon the bond, to be paid out of assets, quando accederint, and in the mean time, to take what remains in the hands of the administrator, applicable to the debt. The question as regards the liability of the administrator out of his own estate, is reserved, and it is ordered that the Commissioner report the evidence upon this part of the case.
It is ordered and decreed, that so much of the Ciicuit decree as disallows the claim of the Bank for four thousand dollars and the interest, be reversed. It is also ordered and decreed, that the said Bank of the State of South Carolina do recove]', as well the sum of four thousand dollars with interest from the 24th September, 1845, as the sum of eleven hundred and thirty-four dollars 28-100, with interest from the 7th February, 1848, allowed by the decree. It is also ordered that the Circuit decree be affirmed in all respects.wherein the same is not modified by this appeal decree, and that the appeal in all other respects be dismissed.
The whole Court concurred.
Decree modified.