M. HOLZINGER *v.* GEO. T. H. GOO, J. V. COCKETT AND W. E. COCKETT, BANK OF HAWAII (WAI-LUKU BRANCH) AND SAM ALO, SR., AUDITOR COUNTY OF MAUI, GARNISHEES.

No. 2520.

SUBMITTED AUGUST 20, 1943.     DECIDED SEPTEMBER 16, 1943.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY KEMP, C. J.

On December 15, 1933, Geo. T. H. Goo, one of the defendants (hereinafter referred to as "the maker"), executed the following promissory note:

"800.00                    No. 2771

"Wailuku, Maui, T. H., Dec. 15, 1933.

"For value received I promise to pay to the order of MAUI FINANCE COMPANY, LIMITED at their office Eight Hundred————Dollars in twenty equal installments of $40.00 each on the 20th day of each month following the date hereof, until the whole amount of this note shall have been fully paid, with interest from maturity at 8% per annum until paid.

"Failure to pay any installment hereon when due shall entitle the holder hereof to declare all installments due and payable.

"In the event this note is placed in the hands of an attorney for collection, the parties liable hereon agree to pay the cost of collection, including a reasonable attorney fee.

"Geo T H Goo"

At the same time the maker executed a chattel mortgage (hereinafter more particularly referred to) as security for the payment of the note and delivered the note and mortgage to the payee, who was also the mortgagee named in the mortgage.

Before the delivery of the note and mortgage the other two defendants (hereinafter referred to as "the indorsers"), at the request of the maker and for his accommodation, executed the following indorsement on the back of the note:

"The endorsers, sureties or guarantors of this note severally WAIVE demand, presentment, protest, and/or notice of protest, demand, presentment, suit and all other requirements necessary to hold them; and they agree that the time of payment may be extended without notice to them of such extension. The owner or holder is hereby authorized to apply on or after maturity, to the payment of this note, any funds or securities held by said Company owned by any endorser or guarantor of this note.

"J. V. Cockett

"W. E. Cockett"

From time to time the maker made partial payments on account of said note, the aggregate of the payments being $220. The last payment was made September 30, 1935, which left $580 unpaid on account of principal. The final installment of the note was due August 20, 1935. Suit was filed against the maker and the indorsers June 25, 1940.

The maker answered and set up that he had been released and discharged from the payment of the claim, in that on February 5, 1936, he was adjudicated a bankrupt and was discharged on September 2, 1939.

The indorsers allege in their answer that they have a good defense to the cause of action because of the facts, of which the following is the substance: That said note is secured by a mortgage which the mortgagee did not record until January 16, 1936, and that by reason of the failure and neglect of the mortgagee to record said mortgage within a reasonable time the property covered by the mortgage became impaired and lost; that the mortgagee

released and surrendered to the trustee in bankruptcy the fixtures, goods, wares and merchandise covered by the mortgage; that said note is nonnegotiable and the holder of the note failed and neglected to use due diligence to collect from the maker the amount of the note when due, and that it appears that the payee granted to the maker an indefinite extension of time of payment of said note. The plaintiff stipulated that the plea of bankruptcy by the maker was good and that he was entitled to judgment thereon. The cause proceeded against the indorsers, jury waived, and it was stipulated that the plaintiff is not a holder in due course, the note having been assigned to him without consideration other than for collection. Although the stipulation is silent as to when the assignment was made, the record discloses that the original payee filed a claim on the note as owner and holder with the referee in bankruptcy on August 7, 1936, long after it was due.

The circuit judge held that the indorsers were discharged on two grounds. First, that the agreement of the indorsers that the time of payment may be extended without notice to them, being in the singular, authorized only one extension and that there had been numerous extensions without notice; second, that the failure and neglect of the mortgagee to have the mortgage promptly recorded deprived the indorsers of their right to subrogation and entitled them to their discharge. Judgment was accordingly entered, and plaintiff is here on exceptions.

Counsel for plaintiff having argued that the note is negotiable and that the discharge of an indorser of a negotiable promissory note can be effected only as prescribed in the uniform negotiable instrument Act set forth in section 7189, Revised Laws of Hawaii 1935, entitled, "Discharge of persons secondarily liable," much of the argument on the issue of whether the failure to record the

mortgage discharged the indorsers is devoted to the question of whether the negotiable character of the note was destroyed by certain covenants of the mortgage. In view of the stipulation that the plaintiff is not a holder in due course and the provision of section 7127, Revised Laws of Hawaii 1935, that "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable," the question of being negotiable or nonnegotiable becomes immaterial. " * * * Where an action is brought on an instrument by the payee, it is generally of no importance whether the instrument is negotiable or nonnegotiable." 8 C. J., Bills and Notes § 54 E. (*Cherry* v. *Sprague*, 187 Mass. 113, 72 N. E. 456, 105 Am. St. Rep. 381, 67 L. R. A. 33.) The plaintiff not being a holder in due course stands in the shoes of the payee. Consequently, any defense available to an indorser of a nonnegotiable note is by virtue of the quoted statute available to the indorsers in this case, regardless of the effect of the mortgage upon the character of the note. We therefore find it unnecessary to decide whether or not the covenants of the mortgage rendered the note nonnegotiable.

"An Indorser is one who signs a negotiable instrument for the purpose of passing title; one also may become an Indorser by special contract, although not in the chain of title. In either of these relations, the Indorser is a party to a suretyship contract." Stearns on Suretyship (3d ed.) § 7.

"It is the duty of the creditor to exercise ordinary diligence in preserving the securities in his control which are applicable to the debt for which another is surety * * * .

"Thus the principal gives a mortgage upon his property, which the creditor fails to file or put upon record until after other liens have intervened, * * * .

"In such cases the surety or guarantor should be dis-

charged, to the extent of their injury caused by the negligence of the creditor, which would be the ascertained value of the property at the time the lien could have been made effective by filing, or the amount that could have been realized on the collateral, in case the creditor had acted with due diligence. * * *

"The duty of filing a mortgage results from the fact that the instrument which evidences the lien is within the sole custody and control of the creditor, with no opportunity open to the promisor to protect himself, but after the lien is created and made effective against intervening liens by filing, the promisor has the privilege of paying the debt and becoming subrogated to the rights of the creditor, thereby being placed in a position to prosecute his own foreclosure. * * *

"Such would be the case, where the creditor by collusion with the debtor permits the property to be wasted. The prejudice to the surety under these circumstances does not come from mere delay, and the co-operation of the creditor in wasting the securities, even to a small extent, will taint the entire transaction, and place upon him the responsibility for the loss to the surety." Stearns on Suretyship, *supra* § 99.

"While it has been held that a surety is not discharged by failure of the creditor to record the instrument evidencing the obligation, such as a mortgage in consequence of which the security is lost, especially if the surety did not request the creditor to record the instrument, there are other cases to the contrary. * * * If the creditor has agreed to record a mortgage, he must do so within a reasonable time." 50 C. J., Principal and Surety § 262, pp. 161, 162.

"An indorser is discharged from liability on the instrument if the security is impaired by the act or negligence of the holder, to injury of the indorser, without his knowledge and consent. * * *

"So it has been held that an indorser on a note may be discharged by the holder's failure to record a mortgage given to secure the note, whereby the benefit of the mortgage security is lost, to the extent of loss suffered by the indorser; certainly so if the holder had agreed to record the mortgage properly." 10 C. J. S., Bills and Notes § 476 d, pp. 1039, 1040.

*Smith* v. *Van Arsdale*, 140 So. 95 (La.), involved the following facts: B. W. Myrick sold to Pat Van Arsdale a tract of land for $1350 and accepted two promissory notes executed by Van Arsdale for $675 each and payable to the order of Myrick one and two years after date. The deed retained a mortgage on the land in favor of Myrick or any future holder of the notes. Myrick transferred the notes by indorsement to Dr. R. W. Smith, who became the holder thereof in due course, for value before maturity. After maturity of the notes Dr. Smith sued Van Arsdale as maker and Myrick as indorser and for foreclosure of the mortgage.

The evidence showed and the court found that Van Arsdale cut and removed timber from the land, which he sold for $230, with the knowledge and consent of Dr. Smith, the then holder, and without the consent of Myrick.

Held: That the removal of the timber impaired the mortgage security and that the holder having authorized the removal without the consent of Myrick, he was discharged to the extent of the value of the timber removed, citing as the rule of law applicable to the facts 8 C. J., Bills and Notes § 861 h, as follows: "The surrender or release by the holder of a bill or a note of any security which he has received from the acceptor or maker, for the payment of the instrument, operates as a discharge of indorsers to the amount of the security so surrendered, provided the indorsers' liability has not become fixed, and they do not consent thereto; * * * "

The portion of the same section applicable to our facts follows: "Indorsers are released if the security is impaired by the act or negligence of the holder to the injury of the surety or indorser, as where there is an improper sale of collateral or an improper appropriation of the proceeds by the holder. So it has been held that an indorser or surety on a note may be discharged by the holder's failure to record a mortgage given to secure the note, whereby the benefit of the mortgage security is lost, except where the filing was, by agreement, not to be made until necessary."

In *Redlon* v. *Heath*, 59 Kan. 255, the facts closely parallel the facts in this case. Heath was an accommodation comaker of a promissory note, payable to the plaintiff Redlon. The note was also secured by a mortgage on real estate of the principal maker situated in Anderson County. Through a mistake of the agent of Redlon, the mortgagee, the mortgage was recorded in Allen County and the mistake was not discovered until other mortgages for more than the value of the land were executed and properly recorded, thereby gaining priority over the earlier mortgage given to secure the note sued upon. The jury found from conflicting evidence that Redlon knew Heath was surety for the principal maker and that he agreed with Heath to have the mortgage recorded.

After stating facts the court concluded: "There would seem to be strong ground for holding a creditor, who takes, at the same time, the obligation of a surety and a mortgage on the property of the principal debtor to such diligence as may be necessary to preserve his security on the property. The plainest dictates of ordinary prudence require that a mortgage on real estate should be promptly recorded. The testimony of Heath is to the effect that he was induced to sign the new note by the execution of the mortgage for his protection as well as for that of the

plaintiff, and that this was talked over and clearly understood by the parties. No reason is apparent why Redlon should not be held to his positive agreement to record the mortgage without delay. Had he done so, the evidence shows that the mortgaged land was of sufficient value to have paid the prior incumbrances as well as his own. By his neglect to record his mortgage, other mortgages, sufficient in amount to absorb the entire property, took precedence and swept his security away. It is manifestly just that the plaintiff, whose negligent failure to comply with his positive agreement has occasioned the loss, should alone bear it."

In the case at bar the following facts are established by the uncontroverted evidence: The maker applied to the Maui Finance Company, Limited, for a loan of $800 and offered as security a chattel mortgage on the "fixtures, goods, wares and merchandise" situated in his store in Wailuku, Maui. The president-manager of the company believing that the property offered was already mortgaged, declined to make the loan without additional security and suggested to the maker that he get indorsers satisfactory to the company. He procured J. V. and W. E. Cockett to indorse the note, after which the note and mortgage were delivered and the loan made. The mortgage was not recorded until January 16, 1936. The evidence disclosed that the prior mortgage which the creditor thought covered the security offered covered a leasehold of the mortgagor's store premises but did not cover the "fixtures, goods, wares and merchandise" offered as security for the loan. The mortgagor was adjudged a bankrupt by the United States District Court on February 5, 1936, and the trustee took possession of the properties covered by the mortgage and sold them. The report of the trustee shows that the stock in trade brought $203.30 net and the fixtures $544.25, or a total of $747.55 for the properties

clearly covered by the mortgage. The sale of other properties of the bankrupt not clearly covered by the mortgage brought the total up to $947.49. On August 8, 1936, a few days over six months after the adjudication, the payee in the note filed its claim thereon with the referee in bankruptcy, which was disallowed by the referee, citing as his reason for disallowing the claim subsection (n) of section 57 [sic] of the Bankruptcy Act, as amended, which provides that claims shall not be proved against a bankrupt estate subsequent to six months after adjudication. The reference to section 57 of the Bankruptcy Act should have been to section 93.

There was ample evidence to justify the finding of the circuit judge that the indorsers declined to indorse the note until they ascertained that the note was secured by mortgage and that they procured from the president-manager of the creditor an agreement that he would have the mortgage recorded. They both testified to that effect, which was denied by the president-manager, but the judge found the facts as testified by the indorsers. In response to a question as to why he withheld the mortgage from record until January 16, 1936, the president-manager of the creditor testified: "A I withheld that mortgage at the request of Mr. G. T. H. Goo. He stated if I recorded that mortgage it would harm his business, as he owed so much money his creditors would not like to see that mortgage recorded, and I did not record the mortgage, to help him along, but about the time or a little before he went into bankruptcy Mr. J. V. Cockett told me that he heard it rumored that he was going into bankruptcy, and before he went into bankruptcy.—Q Mr. 'J. V. Cockett' you mean one of the defendants in this case? A Yes, Mr. John V. Cockett told me that he heard that Goo was going into voluntary bankruptcy, so I recorded my mortgage, and he went into bankruptcy all right about a cou-

ple of weeks after that; two or three weeks or a month, maybe. That is the answer." In that connection J. V. Cockett testified that when he told the president-manager of the creditor that the maker was going into bankruptcy, he learned for the first time that the mortgage was not recorded.

From the foregoing the judge concluded that "after being requested on the date the note was endorsed to record the same right away, and at least by conduct consented to do so, did in fact by agreement with the maker for the concerted purpose of concealing the mortgage from the maker's wholesalers and to the injury of the endorsers, refrain from filing it until it was too late, and all the time the endorsers relied upon the company's conduct that it was recorded in the Honolulu Office."

In addition to the facts already recited, it appears from the evidence that the mortgaged chattels remained in the possession of the mortgagor until they were taken over by the trustee of the bankrupt estate of the mortgagor. Our statute provides, *inter alia*: "Every mortgage * * * of personal property, not accompanied by immediate possession and followed by an actual and continued change of possession of the things mortgaged * * * shall be void as against creditors of the mortgagor, * * * unless such mortgage * * * shall be recorded in the bureau of conveyances." (R. L. H. 1935, § 5158.)

The mortgagee-creditor knew that the mortgagor had other creditors from whom he desired to withhold knowledge of the mortgage. The failure to record the mortgage rendered it void as to them and all subsequent creditors, and the evidence is to the effect that the debts of the mortgagor when he was adjudged a bankrupt, exclusive of the debt secured by the mortgage, far exceeded the amount realized from the sale of his assets.

The trial court having found on conflicting evidence

that the creditor at the request of the indorsers agreed to record the mortgage, it was clearly its duty to have the mortgage recorded within a reasonable time. (50 C. J. 162.) This it failed to do and must therefore suffer the consequences. It being admitted that the value of the lost security was more than sufficient to discharge the entire debt, the question of a discharge *pro tanto* does not arise. The indorsers were entitled to a complete discharge.

Counsel for the plaintiff argue that the foregoing principles are not applicable to the facts of this case; that if it was the duty of the creditor to protect the indorsers by recording the mortgage, which they deny, the duty existed only to the time the note became due by its terms; that when the note became due the status of the indorsers changed from persons secondarily liable to persons primarily liable; that the maker was adjudged a bankrupt more than four months after the final due date of the note and if the indorsers had paid the note when due, as they were obligated to do, and become subrogated to the rights of the creditor, they could then have recorded the mortgage and the subsequent bankruptcy would not have disturbed their lien; that at the time the note became due there was at least $750 of security on hand, which was sufficient to have fully protected the indorsers if they had paid the note and foreclosed the mortgage themselves. From the foregoing it is argued that the loss of the security of the mortgage is due to the failure of the indorsers to discharge their duty when the note became due, rather than to the failure of the creditor to record the mortgage prior to the due date. Counsel's argument is without merit. While it is true that the indorsers upon default of the maker might have paid the note and become subrogated to the rights of the holder-mortgagee, they were not bound to do so. (*Pain* v. *Packard,* 13 Johns. 174

518

[N. Y.]; *King* v. *Baldwin*, 17 Johns. 384, 392 [N. Y.]; *Hurd* v. *Little*, 12 Mass. 502.)

The foregoing conclusion renders it unnecessary for us to consider the other ground of the decision of the circuit judge.

The exceptions are overruled.

*Cass & Silver* for plaintiff-appellant.

*E. Vincent* for J. V. Cockett and W. E. Cockett, appellees.